STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. STONEWALL THOMAS, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 24, 1969—Decided April 23, 1969.

Foley, J. A. D., dissented.

Before Judges SULLIVAN, FOLEY and LEWIS.

*Mr. Daniel R. Coburn* argued the cause for appellant (*Mr. Richard Newman,* Deputy Public Defender, attorney).

*Mr. Edward J. Butrym,* Assistant Prosecutor, argued the cause for respondent (*Mr. Vincent Panaro,* Mercer County Prosecutor, attorney).

The opinion of the court was delivered by

LEWIS, J. A. D. Defendant Stonewall Thomas was indicted, tried and convicted by a jury for carrying a firearm without a permit in violation of *N. J. S.* 2A:151-41 which, in pertinent part, provided:

"* * * any person who carries, holds or possesses * * * on or about his clothes or person * * * or under his control in any public place or public area:
 a. A pistol or revolver without first having obtained a permit to carry the same * * *;
 c. * * * is guilty of a misdemeanor."

There were three witnesses; the facts are relatively uncomplicated. Defendant's brother, John Thomas, testified that on Saturday, November 25, 1967, around 5:50 P.M., he entered a liquor store at Jackson and Market Streets, Trenton; his brother remained outside. He was in the store about five minutes and upon leaving he observed his brother talking with James Smith, whom he (John) knew "from jail"; they were approximately a block away, on the sidewalk near a laundromat. The witness walked in that direction and after he had gone about a block past them, his brother ran up to him and handed him "something * * * it was a pistol." John explained:

"Well, I had a big coat on. He [defendant] said, 'Take this' and stuck it in my pocket."

At that point he turned around and saw Smith either walking or running behind the laundromat.

The witness also testified that he did not know how or when his brother obtained the weapon, it did not belong to his brother, he did not know whether Smith had a gun, and that he was unaware of the events that transpired between his brother and Smith because they occurred either while he was in the liquor store or after he had walked down the block and past his brother and Smith.

Patrolman Capasso gave evidence that in the early morning of Nomember 26 he was dispatched to defendant's home in connection with a warrant for the arrest of defendant and his brother John who "were wanted in connection with a shooting of a James Smith." Defendant was apprehended in the house and, as they were leaving, John "was just approaching from the street" and he was placed under arrest. A search incident thereto revealed a revolver in John's coat pocket.

Defendant denied ownership of the gun. His testimony was to the effect that while his brother was in the liquor store, he met Smith on the sidewalk and an altercation ensued. In the words of defendant,

"He [Smith] shoved me. I shoved him back. He reached his hand in his pocket and pulled out a pistol. It was too close to run. I grabbed him and we had a tussle and the gun fell to the street * * * I picked it up; hand my brother it."

The following cross-examination by the prosecutor is noteworthy:

"Q. Were you here when your brother was testifying yesterday?
A. Yes, I was.
Q. Did you hear him testify that he had walked almost a block down Market Street and then you had run up to him and handed him the gun?
A. I remember him testify to that.
Q. You say his testimony was correct?
A. No, I didn't."

On appeal defendant urges that *N. J. S.* 2A :151–41 is unconstitutional as applied to him and that the evidence was insufficient to establish the essential elements of a crime since his possession of the gun was instantaneous and his intention was not criminal.

■■ That defendant had possession of the firearm is beyond dispute. Although it is unclear as to how long he possessed it, the record plainly indicates that if, indeed, he did not own the gun, he voluntarily took possession of it and made no effort to deliver it to the lawful owner or to the

police authorities; to the contrary, his participation in an effort to conceal the pistol in his brother's pocket suggests a consciousness of possession and a designed control of the weapon. His dealings with the gun in a public place, in the circumstances, indicated an intent to possess it and the effective realization of such intent, a "possession" within the technical meaning of the word as discussed in *State v. Labato*, 7 *N. J.* 137, 148 (1951). The jury was not obliged to accept defendant's version as to what transpired.

 It is next argued that the trial court erroneously failed to mention or explain to the jury the statutory exceptions to *N. J. S.* 2*A*:151–41 and the legal concept of "possession." At no time during the trial did defendant claim possession within the statutory exceptions enumerated in *N. J. S.* 2*A*:151–42, entitled "Carrying firearms about one's premises or for purposes of repair, hunting or target practice." Moreover, defense counsel proffered no requests to the trial judge to supplement the jury instructions with respect to "possession" and made no objections to the charge that was given. To be plain error, defendant's substantial rights must be affected. *R. R.* 1:5–1(*a*); 2:5; *State v. Jefferson*, 101 *N. J. Super.* 519, 527–528 (*App. Div.* 1968), certification denied 52 *N. J.* 486 (1968). We are not convinced that the trial court committed plain error.

Finally, defendant challenges certain remarks of the prosecutor in summation. No objections were made thereto. In any event, we find no prejudicial impropriety.

Judgment affirmed.

FOLEY, J. A. D. (dissenting). I do not disagree with the majority holding that upon the State's proofs a *prima facie* showing of violation of *N. J. S.* 2*A*:151–41 was made out. Nor do I think that a question of constitutional dimensions is presented.

My disagreement stems from the majority holding that the trial court did not plainly err in failing to instruct the jury with respect to the legal concept of "possession."

"Possession" of the revolver was the crux of the case—not necessarily possession in the ordinary dictionary sense, see *e. g.,* "possession," *Webster's Seventh New Collegiate Dictionary* (1967), but in legal connotation, see *State v. Labato, 7 N. J.* 137, 148 (1951).

In *Labato* it was said:

" 'Possession' is an ambiguous term derived from the Roman law. It has variant connotations; but on well-settled principle the word is to be given a strict construction in statutes defining criminal and penal offenses. It signifies an intentional control and dominion. * * * *Animus possidendi* is of the essence of possession. * * * 'Possession is the occupation of anything with the intention of exercising the rights of ownership in respect to it.' * * * The elements of this possession are: First, the mental attitude of the claimant, the intent to possess, to appropriate to oneself; and, second, the effective realization of this attitude. Effective realization involves the relation of the claimant to other persons, amounting to a security for their noninterference, and the relation of the claimant to the material thing itself, amounting to a security for exclusive use at will. All the authorities agree that an intent to exclude others must coexist with the external facts, and must be fulfilled in the external physical facts, in order to constitute possession."

The testimony of defendant, as outlined in the majority opinion, was such that had the jury been instructed in accordance with *Labato* it could reasonably have found (if it believed defendant) that he was not guilty of possession of the revolver within the legal meaning of the term. Absent such instructions the jury was given free rein to apply to this "ambiguous term" of "variant connotations" such definition as might appeal to the lay mind.

Turning to the record: the trial judge read to the jury the indictment which charged that Thomas "did carry in a public place a certain weapon, to wit: a revolver, on or about his person without first having obtained a permit to carry the same, contrary to the provisions of New Jersey Statutes 2A:151-41." The court then went on to say:

"You will note that it mentions the statute 151-41, which reads as follows: 'Except as hereinafter provided, any person who carries, * * * in an automobile, carriage, motor vehicle or other ve-

hicle, or concealed on or about his clothes or person, or otherwise concealed in his possession, * * * a pistol, * * * is guilty of a misdemeanor.' "[1]

After a brief recital of the facts, in which the court observed that the testimony of defendant did not differ greatly from that of his brother, the judge then said, "the question you have to decide is whether or not he had possession. As I say, the testimony does not vary." This was all that was said on the subject of possession.

Thus, it will be seen the jury was never informed concerning the legal, and somewhat restricted, connotation of "possession" in a criminal case, where that fact is the basis of an indictment.

The traditional function of the judge is to instruct the jury as to the law governing the issues to be decided by them under the facts of the particular case. The classical practice generally followed in criminal cases is for the judge to outline the applicable law, explaining and defining the offense charged, and the jury, thus being informed as to the exact law which they must decide had been or had not been violated, places its determination of the facts alongside the law and decides whether the verdict shall be guilty or not guilty. To fail to define the offense attributed to the accused and the essential elements which constitute it, is to assume that jurors are educated in the law—an assumption which no one would undertake to justify. A mandatory duty exists on the part of the trial judge to instruct the jury as to the fundamental principles of law which control the case. Among such principles is the definition of a crime, the commission of which is basic to the prosecution against the defendant. And the duty is not affected by the failure of a party to request that it be discharged. Whether, in the absence of objection, such failure constitutes plain error depends upon

---

[1] At the time the case was tried *N. J. S.* 2A :151–41 had been amended to delete therefrom the element of concealment, *L.* 1966, *c.* 60 § 32, *p.* 497.

the circumstances of the particular case. *State v. Butler,* 27 *N. J.* 560, 594–595 (1958).

Furthermore, the potential harm to defendant which was implicit in the failure of the judge to explain the legal meaning of possession was aggravated by the judge's comment that the testimony of defendant did not differ greatly from that of his brother and that the testimony relevant to possession did not "vary." Obviously the court had in mind the broad concepts of possession revealed by dictionary definitions.

But, as has been noted, the *Labato* definition is somewhat more restricted. Under that definition defendant's version was susceptible of an inference that momentarily and by reflex action he seized the revolver lying in the street to guard against the possibility that Smith might regain possession of it and put defendant in further jeopardy. If so, that coupled with the *immediate* transfer of the weapon to the brother might well have raised a reasonable doubt in the jury's mind of defendant's *animus possidendi* of which, incidentally, no mention was made in the charge.

On the other hand, if the jury believed John Thomas it could reasonably have concluded that, as defendant walked a block or so to join John, ample time elapsed for him to have formed in his mind the requisite *animus possidendi.*

Thus, I conclude that the judge's comment equating the testimony of John to that of defendant was inaccurate and misleading. There was indeed a difference in the two versions and the inferences which could be drawn from them.

I am convinced that (1) the charge as given did not fulfill the mandates of the *Butler* case, and (2) the issue presented was so narrow that the deficiency in the charge constituted plain error. *R. R.* 1:5–1(a).

I would therefore reverse.