144 N.J. Super. 455 (1975)
366 A.2d 335
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM GABRIEL SAPP, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 13, 1975.
Decided July 11, 1975.
*456 Before Judges MICHELS, MORGAN and MILMED.
Mr. Philip S. Elberg argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Miss Barbara Ann Villano, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
PER CURIAM.
Defendant was charged in a two count indictment with (1) possessing controlled dangerous substances, namely heroin and methadone, contrary to N.J.S.A. 24: 21-20 (a)(1), and (2) possessing those substances with intent to distribute contrary to N.J.S.A. 24:21-19 (a)(1). A jury found defendant guilty of possession of heroin and methadone but not guilty of possession with the intent to distribute. Defendant was sentenced to a State Prison term. The sentence was suspended, and he was placed on probation for three years upon condition that he co-operate in a rehabilitation program at the Union County Narcotic Clinic or similar agency as directed by the Union County Probation *457 Department, remaining in the chosen facility as an in-patient until released by its director. Defendant appeals contending that (1) the trial court erred in denying his motion for judgment of acquittal at the end of the State's case and (2) the verdict was against the weight of the evidence.
The State's proofs established that on February 23, 1973 Plainfield Police Officer Robertson, armed with a search warrant and accompanied by several other Plainfield Police Officers, entered the large three story single family house located at 615 Spooner Avenue in Plainfield. Prior thereto, Officer Robertson conducted a surveillance of the premises as part of his undercover work with the Narcotics Strike Force in Union County. During the course of his surveillance, Robertson observed that the house was occupied by several unrelated persons, noting defendant's presence there on three occasions. Upon entering the officers found Bernard Joseph Casey, Reginald Bland, a.k.a. Reginald Duboise Belton, and Valerie Francine Pollard on the first floor in the dining room which was apparently also used as a bedroom. Defendant was found in the adjoining kitchen which was separated from the dining room by a door found closed at the time of the raid. Georgiana Elaine Van Dyke was found on the second floor landing, and Betty Brown, who apparently owned the house, was found in a bedroom on the second floor. While the raid was being conducted, two known narcotic dealers in Plainfield came to the house, giving rise to a clear inference that the house was used as a distribution center.
Although the search failed to reveal narcotic drugs either on defendant's person or in the kitchen where he was found, quantities of heroin and methadone were found in the dining room. Thirteen glassine envelopes containing heroin were found in a brown bag behind a television set. A Pathmark margarine container filled with methadone was found in open view on top of a dresser. Ms. Pollard was found choking in an attempt to swallow 21 glassine envelopes of heroin, *458 and Mr. Belton was found with a methadone biscuit in his coat pocket. In addition, the search of the dining room revealed in open view on top of the dresser a black leather change purse containing narcotic paraphernalia such as bottle cap cookers, syringes and strands of wire used to clear hypodermic needles. On the same dresser, and also in open view, were measuring spoons and a strainer used in cutting and measuring narcotics and 37 empty glassine bags used to package narcotics for sale in the street. This open and obvious display of narcotics and narcotic paraphernalia fully supports Robertson's opinion "that anyone residing at this premises had knowledge of what was going on in there."
Defendant contends that there was not sufficient evidence to allow a jury to conclude that he had possession of the heroin and methadone found by the police and that therefore his motion for a judgment of acquittal at the end of the State's case should have been granted. We disagree.
N.J.S.A. 24:21-20 provides that with certain exceptions it is "unlawful for any person, knowingly or intentionally * * * to possess, actually or constructively, a controlled dangerous substance". The unqualified term "possess" as used in this statute signifies an intentional control and dominion of a proscribed narcotic drug accompanied by knowledge of its character. See State v. Reed, 34 N.J. 554, 557 (1961); State v. Labato, 7 N.J. 137, 148 (1951); State v. Reyes, 98 N.J. Super. 506, 512 (App. Div. 1968), cert. den. 51 N.J. 582 (1968). See also State v. Humphreys, 54 N.J. 406, 413-414 (1969). Actual physical manual control of the proscribed drug is not required if the intention to exercise dominion and control over it is manifested in circumstances where it is reasonable to infer that the capacity to do so exists. State v. Rajnai, 132 N.J. Super. 530 536 (App. Div. 1975); State v. Bozeyowski, 77 N.J. Super. 49, 51 (App. Div. 1962), cert. den. 374 U.S. 851, 83 S.Ct. 1916, 10 L.Ed.2d 1071 (1963); State v. Brown, 67 N.J. Super. 450, 455 (App. Div. 1961); State v. Campisi, 42 N.J. Super. 138, 145 (App. Div. 1956), rev'd on other *459 grounds 23 N.J. 513 (1957). Moreover, possession need not be exclusive but may be jointly exercised by two or more persons. State v. Rajnai, supra; State v. Puckett, 67 N.J. Super. 365, 376 (App. Div. 1960), aff'd 34 N.J. 574 (1961). See also 28 C.J.S. Drugs and Narcotics Supplement § 209, at 308-311.
The standard to be applied in determining a motion for judgment of acquittal under R. 3:18-1 at the conclusion of the State's case is set forth in State v. Reyes, 50 N.J. 454 (1967), as follows:
[T]he broad test for determination of such an application is whether the evidence at that point is sufficient to warrant a conviction of the charge involved. R.R. 3:7-6. More specifically, the question the trial judge must determine is whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a jury could find guilt of the charge beyond a reasonable doubt. * * * [Id., at 458-459.]
The obligation of this court in reviewing the determination of such a motion by the trial court is to consider the State's proofs in the light of the foregoing standard and to determine therefrom how the motion should have been decided. State v. Reyes, supra; State v. Moffa, 42 N.J. 258, 263 (1964). In our determination no consideration has been given to any evidence or reasonable inferences to be drawn therefrom adduced on the defendant's case. See State v. Reyes, supra; State v. Fiorello, 36 N.J. 80, 86-91 (1961), cert. den. 368 U.S. 967, 82 S.Ct. 439, 7 L.Ed.2d 396 (1962).
We are convinced that considered in a light most favorable to the State the evidence at the end of its case and the logical inferences to be drawn therefrom were sufficient for a jury to find defendant guilty beyond a reasonable doubt of possession of the heroin and methadone. Accordingly, the trial judge properly denied defendant's motion for a judgment of acquittal at the end of the State's case.
*460 We find no merit in defendant's claim that the verdict was against the weight of the evidence. Entirely apart from the fact that defendant did not move for a new trial and is therefore barred under R. 2:10-1 from questioning the weight of the evidence (State v. McNair, 60 N.J. 8, 9 (1972)), we find from our study of the record that defendant's guilt was proved beyond a reasonable doubt. The evidence established that defendant lived in the house and slept in his bed in the dining room. Moreover, defendant's only witness, Mr. James, testified that the heroin found in the dining room had been there for approximately nine hours, and that defendant was in the dining room that day "long enough for me to tell him I wanted to use his bed." The jury was not compelled, however, to accept testimony given by Mr. James in an attempt to exonerate defendant that the narcotics belonged to Ms. Pollard and himself, and that while others knew of its presence in the house defendant did not. Similarly, the jury did not have to believe his testimony that the heroin was put on top of the television set because "everybody was getting ready to get high" except defendant, and that on the day the raid took place defendant did not use his bed in the dining room but slept in the basement instead. The jury undoubtedly properly weighed this testimony and found defendant guilty of possession of the heroin and methadone. We are convinced that defendant's conviction was not a miscarriage of justice under the law.
Affirmed.
MORGAN, J.A.D. (dissenting).
The majority holds, in effect, that evidence of a defendant's presence with several other persons in a dwelling owned by another, in which heroin is found, without more, constitutes sufficient evidence to support a conviction of possessing that heroin. It is from this holding that I respectfully must dissent.
A conviction for possession of illicit drugs may, of course, be predicated upon circumstantial evidence. Such a conviction *461 may be based upon evidence demonstrating constructive rather than actual possession. State v. Campisi, 42 N.J. Super. 138 (App. Div 1956), appeal dismissed in part, 23 N.J. 513 (1957). Where, however, a defendant is one of several persons found on premises where illicit drugs are discovered, it may not be inferred that he knew of the presence or had control of the drugs unless there are other circumstances or statements of the defendant tending to permit such an inference to be drawn. Although there exists no New Jersey case directly in point, research has disclosed a number of recent cases from several other jurisdictions so holding. In People v. Mosley, 131 Ill. App.2d 722, 265 N.E.2d 889 (App. Ct. 1971), the court held that discovery of marijuana in the trunk of a car in which the defendant was a passenger was not sufficient to establish the defendant's possession thereof. In Commonwealth v. Florida, 441 Pa. 534, 272 A.2d 476 (S.Ct. 1971), the court held that guests at a party could not be convicted of possession because a jar containing marijuana and four butts in an ashtray were found on the premises when no marijuana was found on any of the defendants. Mere proof of the defendants' presence at the party with an opportunity to use or possess marijuana was considered insufficient to convict. In State v. Haynes, 25 Ohio St.2d 264, 267 N.E.2d 787 (S.Ct. 1970), the court held that where the only evidence of possession is the police discovery of narcotics in the general living area of the apartment occupied by the defendant and four others, such evidence is not sufficient to convict for possession. See also, Brown v. State, 481 P.2d 475 (Okl. Cr. App. 1971); Commonwealth v. Schuloff, 218 Pa. Super. 209, 275 A.2d 835 (1971); Langdon v. State, 235 So.2d 321 (Fla. App. 1970).
Applying these principles to the present case, it is clear that the only evidence adduced by the State bearing on defendant's guilt concerned his presence on the premises where drugs were found. Nothing in his conduct following police entry onto the premises provides any basis for inferring guilt. He made no incriminatory statements. No drugs *462 were found on his person, nor were any found in close proximity to where he was found as the police entered. Unless this court is prepared to hold that evidence establishing a defendant's presence with several others in a dwelling in which drugs are found supports a conviction of possessing those drugs, there is nothing in the record to support the jury's finding of guilt in the present case. I would reverse the court's denial of defendant's motion to acquit.