STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. WILLIE LEE BROWN, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 14, 1978—Decided March 13, 1978.

Before Judges ALLCORN, MORGAN and HORN.

*Mr. Stanley C. Van Ness,* Public Defender of New Jersey, attorney for appellant (*Mr. Michael I. Lubin,* designated counsel, of counsel and on the brief).

*Mr. John Degnan,* Attorney General of New Jersey, attorney for respondent (*Mr. William F. Hyland,* former Attorney General of New Jersey and *Mr. Solomon Rosengarten,* Deputy Attorney General, of counsel and on the brief).

PER CURIAM. Convicted by jury of possession of heroin (*N. J. S. A.* 24:21–20(a)) and possession of heroin with intent to distribute (*N. J. S. A.* 24:21–19(a)(1)), defendant appeals, contending that (1) the trial judge erred in denying his motion to suppress evidence uncovered in a warranted search on the ground that the affidavit upon which the warrant issued contained an insufficient showing of probable cause; (2) the verdict was against the weight of the evidence and defendant's motion for a new trial on that ground should have been granted; (3) error occurred when the court refused to strike evidence that defendant was engaged in selling narcotics, and (4) the judge should have merged the two convictions.

The evidence upon which the convictions must rest disclosed that on May 16, 1971, following a three-day surveillance of an apartment house at 185 Monticello Avenue, Jersey City, police officers, armed with a search warrant, entered apartment 10 at that address in order to search for narcotics. During their surveillance of the building the officers had observed several males, some of whom were known narcotics users, enter the front door of the apartment house,

remain in the building for a short period of time, and then leave in a hurried manner. No effort was made to determine to which apartment in the apartment house these suspected purchasers of narcotics resorted. None of them were stopped after leaving for questioning as to which apartment they had been visiting and for what purpose. According to the officers on surveillance, their suspicion that these persons had purchased narcotics was based on the knowledge that several of them were users and the hurried manner in which they departed the building.[1]

The entry into the apartment house on May 16, 1971 was accomplished by "slipping" the bottom lock of the hallway entrance to the apartment house with a thin knife. Ascending to the fourth floor where apartment 10 was located, they rang the bell and served the warrant on defendant Brown who answered the door.

A search of the apartment revealed 50 glassine bags of white powder, later identified as heroin, found in the pocket of a white dress hanging in a closet of one of the two bedrooms in the apartment. Twelve additional glassine bags containing white powder were found on the person of a Wallace Young, who was in the apartment at the time of the search. Although defendant was searched at the apartment and later at police headquarters, no narcotics were found on his person. No money was found in the apartment or on either defendant or Young.

Although evidence of defendant's relation to the apartment was sparse, there was enough to support a conclusion that he lived there for an undetermined period of time. Hence, one of the officers testified that he had seen him on several occasions in the neighborhood entering the building

---

[1]Obviously, their suspicions were also engendered by the tip from the reliable informant to the effect that narcotics were being sold from apartment 10 at that address, which tip provided part of the factual basis upon which the search warrant issued. The tip was, however, properly kept from the jury.

in question and defendant himself, when at police head-quarters after the search, gave apartment 10 at 185 Monticello Avenue as his place of residence. The record, however, is silent as to whom the apartment was leased, the nature of Wallace Young's relationship to the apartment other than his presence there during the search, and whether others were living there as well. Although women's clothing was found in the closet in which the heroin was also found, nothing in the evidence suggested to whom the clothing belonged or whether the owner or owners of the clothing lived there.

Hence, the evidence supporting the jury's verdict concerning possession, viewed in a light most favorable to the State, discloses that defendant, a resident of apartment 10 at 185 Monticello Avenue, Jersey City, was present and living in the apartment where narcotics were found concealed in the pocket of a dress belonging to some unknown person, hanging in a bedroom closet, and in the possession of another person also found present in the apartment.

■ Applying *State v. Sapp,* 144 *N. J. Super.* 455 (App. Div. 1975), rev'd on the dissenting opinion, 71 *N. J.* 476 (1976), decided by the Supreme Court after trial of this case, we conclude that the State's case was insufficient as a matter of law.[2] In *Sapp,* as here, defendant resided in premises where narcotics were found and from which narcotics were being distributed. In both cases the drugs were found in concealed places; in *Sapp,* however, narcotic paraphernalia was found in plain view. The majority in the Appellate Division concluded that defendant lived on the premises and that he could, therefore, properly be found to have constructive possession of the narcotics found in the apart-

---

[2]Although defendant has not appealed from the denial of his motion for acquittal, we see no reason why his contention that the verdict was against the weight of the evidence cannot be viewed as embracing as well the insufficiency of the State's case as a matter of law.

ment. The dissenting view, adopted by the Supreme Court, concluded that mere presence in a house or apartment where drugs are found, even when defendant is living there, will not, without more, provide a sufficient basis for a conviction of possession. Since the evidence in *Sapp* lacked some additional indication of defendant's guilt, apart from his mere presence in the place where drugs were found, an insufficient basis for conviction was presented. In this case, as in *Sapp*, nothing beyond defendant's presence or residence in the apartment suggested that he constructively possessed the heroin concealed in the pocket of the dress hanging in a bedroom closet. He made no incriminating statements and engaged in no suspicious conduct. No drugs or money were found on his person. The fact that in *Sapp* many persons were in the apartment when the drugs were found, whereas in this case only two were present, does not, in our view, render *Sapp* inapplicable. The record in this case suggests the residence of at least one other person, the owner of the dress in which the drugs were found.

*State v. Sapp, supra,* can profitably be compared with *State v. Gaines,* 135 *N. J. Super.* 240 (App. Div. 1975), aff'd o. b. 75 *N. J.* 83 (1977). In *Gaines,* unlike *Sapp,* defendant did engage in conduct during the search that provided a sufficient basis for his conviction of possession. In *Gaines,* when the police entered the premises where the drugs were found, Gaines fled to the bathroom and attempted to hide himself in the bath tub having in his possession at the time glassine envelopes containing white powder. Such conduct, clearly evidencing consciousness of guilt, when coupled with his presence at the place where drugs were found, provided an adequate evidential foundation for a conviction. See also, *State v. Reyes,* 98 *N. J. Super.* 506 (App. Div.), certif. den. 51 *N. J.* 582 (1968), where evidence that defendant had dispensed narcotics from an apartment he shared with his paramour to users for money, coupled with evidence of narcotics found in that apartment, provided a sufficient basis for conviction, the court concluding:

There was ample evidence in this case to indicate that defendant was engaged in the unlawful traffic of heroin at the apartment and that he exercised intentional dominion and control over the illicit drug found there with knowledge of its character. [98 *N. J. Super.* at 512].

In the present case, however, the only evidence upon which the conviction could be based was defendant's presence in the apartment in which concealed drugs were found, and his exclusive or nonexclusive residence there for some undetermined period of time. Too much is missing from the State's proof to permit conviction on this state of the evidence. The record is silent as to who owned the dress in which the illicit drugs were found and whether the owner of the dress or anyone else shared residence in the apartment in question. Moreover, the fact that drugs were found on the person of the other occupant of the apartment whose relation to the apartment, as tenant or guest, temporary or permanent, went unexplained, does suggest that the drugs were his, and not defendant's. Although, of course, drugs are capable of being possessed by more than one person, nothing in the evidence suggests that defendant even knew that the drugs were present or that he intended to possess them.

█ In this connection, and although defendant has not raised that point, we note that a portion of the instructions to the jury was incorrect and this error could well have influenced the jury in reaching its verdict. After correctly defining constructive possession as "possession in which the property, though not physically on one's person, is so located that he is aware of the presence of the property and is able to exercise intentional control over it, go to it and get it and obtain it * * *," the judge charged the following:

> *If it's on premises over which you exercise control and dominion, you have constructive possession of what's on it.* Books on my book shelf, I don't have them in my hands but I can go and take the book, it's mine, I have possession of it, would be an illustration. *On premises or over which you exercise control and dominion, one may be said to have constructive possession.* [Emphasis supplied]

Later on in the charge, the judge returned to the same theme:

One may have actual possession on one's person. *One may have constructive possession if it's on the premises over which you exercise dominion and control and you can go to it if you want, take it in your hand.* That would be constructive possession. [Emphasis supplied]

Here, the judge clearly suggested to the jury that if one lives in an apartment, even on a nonexclusive basis, one constructively possesses all that is in it to the point where criminal liability for such possession will attach. We do not regard this as an accurate statement of the law. The mere fact that an item is in one's apartment, perhaps placed there by another, and concealed therein, does not *ipso facto* constitute the one in control of the premises a possessor, actual or constructive, of the item so concealed. Possession requires, at the very least, knowledge that the item is present, and further requires an affirmative intent to exercise dominion and control over it. See *State v. Humphreys,* 54 *N. J.* 406, 413–14 (1969). In this case, the jury, in convicting the defendant of possessing the heroin found concealed in the pocket of the dress, may have applied this instruction literally, concluding that since defendant lived in this apartment, he constructively possessed all that was in it.

Beyond the error in the charge, however, we have concluded that because of the evidential insufficiency of the State's case, the trial judge should have granted defendant's motion for an acquittal. We, therefore, find it unnecessary to consider defendant's other arguments.

Reversed and remanded for entry of a judgment of acquittal.