STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
WILLIE LEE BROWN, DEFENDANT-RESPONDENT.

Argued November 14, 1978—Decided July 24, 1979.

*Mr. Solomon Rosengarten,* Deputy Attorney General, argued the cause for appellant ,(*Mr. John J. Degnan,* Attorney General of New Jersey, attorney).

*Mr. Michael I. Lubin,* Designated Counsel, argued the cause for respondent (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

The opinion of the court was delivered by

HANDLER, J. A Hudson County Grand Jury indicted Willie Lee Brown and his wife, Leona, on counts charging unlawful possession of heroin and unlawful possession of heroin with intent to distribute, in violation of *N. J. S. A.* 24:21–20(a) and *N. J. S. A.* 24:21–19(a)(1). Following a severance, defendant Willie Lee Brown moved to suppress the evidence obtained during the search of his apartment, contending that the affidavit underlying the search warrant had failed to establish probable cause. The motion was denied and the case proceeded to trial.

The crux of the appeal, as certified by this Court, 77 *N. J.* 496 (1978), is the sufficiency of the State's evidence to support defendant's convictions. The State's proofs at trial showed generally that from May 13, 1971 through May 16, 1971 Detective Edward Myers, a member of the Jersey City Police Department Narcotics Squad, sat in a black van outside a four-story red brick dwelling, containing front and back apartments, located at 185 Monticello Avenue, Jersey City, and conducted a surveillance of suspected narcotics operations. From this vantage point Myers noticed about 20 to 25 males, including several known narcotics users, enter the

building, and, soon afterward, exit surreptitiously. On May 16 Detective Myers applied to the Jersey City Municipal Court for a warrant to search the premises of Apartment 10 of the building he had watched. Shortly thereafter, armed with the warrant, Myers and five other police officers conducted a search of Apartment 10. They were admitted into the apartment by the defendant. After frisking Brown at the door, Myers proceeded into a rear bedroom where he found an individual named Wallace Young with 12 glassine envelopes containing white powder in his right pants pocket. Another officer entered a different bedroom where he found 50 glassine envelopes containing white powder inside the pocket of a white dress in the bedroom closet. Further search of the apartment uncovered empty glassine bags and elastic bands, paraphernalia customarily used for packaging narcotics. The 50 envelopes and their contents, which were heroin, were admitted into evidence. It was valued at $3 to $5 a bag or between $150 and $250. After his arrest, defendant admitted to the police that he lived in the apartment.

At the conclusion of the State's case, the defendant moved for a directed verdict of acquittal on both counts. He stressed the absence of testimony indicating whether the quantity of heroin found was for personal consumption or sale, the failure to establish any connection between the individuals who had surreptitiously left the apartment building and the heroin found in Apartment 10, the failure to establish Brown's residency in that apartment, the lack of culpable conduct by the defendant and the absence of any money in the apartment. The motion was denied. The defendant then rested and, following the summations and instructions, the case was submitted to the jury which returned a unanimous verdict of guilty on both counts. A post trial motion to vacate the convictions and grant a new trial on the grounds that the verdict was against the weight of the evidence and would produce manifest injustice was denied and defendant was, thereafter, sentenced to concurrent terms at the State Prison of three to five years on the two counts.

On the appeal to the Appellate Division the defendant's primary contentions were that the search warrant lacked probable cause and the trial court erred in denying the motion for a new trial, since the jury's verdict was against the weight of the evidence. The Appellate Division, in a *per curiam* decision reported at 157 *N. J. Super.* 110 (1978), reversed and remanded for entry of a judgment of acquittal.[1] Applying *State v. Sapp,* 71 *N. J.* 476 (1976), rev'g on dissenting opinion below, 144 *N. J. Super.* 455, 460 (App. Div. 1975), it concluded that the State's case was insufficient as a matter of law. 157 *N. J. Super.* at 114. The court also ruled that the trial court's charge on possession constituted error. *Id.* at 116–117. The suppression issue was not treated. We now reverse and remand.

I

The primary argument presented in this appeal is whether there was sufficient evidence to find defendant guilty of the constructive possession of heroin as well as its possession with intent to distribute. The basic test to be applied in challenging the sufficiency of the evidence is

> whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
> [*State v. Reyes*, 50 *N. J.* 454, 459 (1967)].

This standard is consistent with that articulated by the United States Supreme Court which stated recently in *Jackson v. Virginia,* —— *U. S.* ——, ——, 99 *S. Ct.* 2781, 2789, 61 *L. Ed.* 2d 560 (1979):

---

[1] The Appellate Division viewed the appeal as embracing defendant's motion addressed to the sufficiency of the evidence. *Id.* at 114 n. 2. For purposes of this appeal, we accept that posture of the case.

592

After [*In re Winship*, 397 *U. S.* 358, 90 *S. Ct.* 1068, 25 *L. Ed.* 2d 368 (1970)] the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Woodby v. INS*, 385 *U. S.* 276, 282, 87 *S. Ct.* 483, 486, 17 *L. Ed.* 2d 362. Instead the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson v. Louisiana*, 406 *U. S.* 356, 362, 92 *S. Ct.* 1620, 33 *L. Ed.* 2d 152. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the fact-finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law. (footnotes omitted) (emphasis in original).

 This Court has decided generally that a jury may draw an inference from a fact whenever it is more probable than not that the inference is true; the veracity of each inference need not be established beyond a reasonable doubt in order for the jury to draw the inference. *State v. DiRienzo,* 53 *N. J.* 360, 376 (1969). See also, *Leary v. United States,* 395 *U. S.* 6, 36, 89 *S. Ct.* 1532, 1548, 23 *L. Ed.* 2d 57, 82 (1969). Nevertheless, the State's right to the benefit of reasonable inferences should not be used to shift or lighten the burden of proof, or become a bootstrap to reduce the State's burden of establishing the essential elements of the offense charged beyond a reasonable doubt. *Ulster County Court v. Allen,* —— *U. S.* ——, —— 99 *S. Ct.* 2213, 60 *L. Ed.* 2d 777 (1979); see *Sandstrom v. Montana,* —— *U. S.* ——, ——, 99 *S. Ct.* 2450, 61 *L. Ed.* 2d 39 (1979); *State v. DiRienzo, supra,* 53 *N. J.* at 373–382. Also, *In re Winship,* 397 *U. S.* 358, 364, 90 *S. Ct.* 1068, 1072–1073, 25 *L. Ed.* 2d 368, 375

(1970); *Turner v. United States*, 396 *U. S.* 398, 417–424, 90 *S. Ct.* 642, 652–656, 24 *L. Ed.* 2d 610, 624–627 (1970); *cf. Jackson v. Virginia, supra.*

The court below ruled the evidence insufficient on the strength of *State v. Sapp, supra.* The Appellate Division believed that the evidence, viewed in a light most favorable to the State, disclosed only that the defendant was present and living in the apartment when narcotics were found in a bedroom closet in the pocket of a dress belonging to some unknown person and additional narcotics were found in the possession of another person, who was also present. 157 *N. J. Super.* at 114. In its view there were no other relevant circumstances to suggest that defendant even knew drugs were there or could control them. *Id.* at 116. The court concluded that nothing beyond defendant's "mere presence or residence" supported a finding of constructive possession. *Id.* at 115.

In *State v. Sapp, supra,* we endorsed the general proposition, as stated in the dissenting opinion of the Appellate Division, that:

Where * * * a defendant is one of several persons found on premises where illicit drugs are discovered, it may not be inferred that he knew of the presence or had control of the drugs unless there are other circumstances or statements of the defendant tending to permit such an inference to be drawn.

[144 *N. J. Super.* at 461].

In this case the Appellate Division attempted to follow *State v. Sapp.* We differ, however, with its conclusion that the total circumstances depicted by the proofs here, in conjunction with defendant's presence on the premises, were insufficient to allow the jury to draw relevant inferences and to determine beyond a reasonable doubt defendant's knowledge and control of the narcotics as a basis for its verdicts. In so ruling, it has become clear to us that further refinement in the application of the doctrine dealt with in *State v. Sapp* is required.

If the mandate for appropriate judicial review in this kind of case (*e. g., Jackson v. Virginia, supra* and *State v. Reyes, supra*) is to be satisfied, a meticulous and objective analysis of the evidence is imperative. Our canvass of the record discloses, without question, that defendant was not merely present on the premises at the time when narcotics were found. There were other evidential circumstances lending distinctive color to the character of defendant's presence at the scene. It is important to stress that defendant lived in the apartment. It was he who allowed the officers into the apartment, and, by his own admission, he resided there. The Appellate Division, of course, noted that defendant "resided in premises where narcotics were found and from which narcotics were being distributed." 157 *N. J. Super.* at 114. However, probably influenced by *Sapp*, it apparently gave occupancy or residency little evidential weight. But, *Sapp* shared a large three-story house with several unrelated people, factors which could weaken the inference of knowledge and control over household contents otherwise drawable from the fact of occupancy. In contrast, there was no indication, here, that defendant lived under similar conditions. The number of occupants, if any, was not established at trial.[2] There is nothing to suggest an occupancy by others in such numbers or circumstances sufficient to dilute defendant's control over his own residence. In the context of the evidence, as presented, one can readily draw the inference that the occupant of such premises would have knowledge and control of its contents.

In addition, it was noted by the Appellate Division that the narcotics were concealed. *Id.* Ordinarily it might be difficult to infer knowledge of the presence of a hidden item of personalty by a particular occupant where more than one person lives on the premises. The Appellate Division, however,

---

[2]There was some indication made in the course of the pretrial motion to sever, but not otherwise revealed during trial, that defendant lived in the apartment with his wife.

made too much of the circumstance that the hiding place was a pocket of a dress in a bedroom closet. The places where contraband may be concealed are as limitless as human cunning. Considerable evidential significance must be accorded the fact that the item in question was heroin. The nature of the drug serves to overcome the fact that its presence was secreted, rather than in plain view. It is likely that a drug, which would create grave incriminatory risks to anyone found in its presence, would be hidden. Since possession or use of the heroin engenders a substantial penal threat, it is extremely unlikely that heroin could turn up in a person's residence without his awareness. See *e. g., Commonwealth v. Aguiar,* 370 *Mass.* 490, 350 *N. E.* 2d 436 (Sup. Jud. Ct. 1976) ; *State v. Gilman,* 110 *R. I.* 207, 291 *A.* 2d 425 (Sup. Ct. 1972) ; *People v. Reisman,* 29 *N. Y.* 2d 278, 327 *N. Y. S.* 2d 342, 277 *N. E.* 2d 396 (Ct. App. 1971), *cert.* den. 405 *U. S.* 1041, 92 *S. Ct.* 1315, 31 *L. Ed.* 2d 582 (1972) ; *People v. Nettles,* 23 *Ill.* 2d 306, 178 *N. E.* 2d 361 (Sup. Ct. 1961), *cert.* den. 369 *U. S.* 853, 82 *S. Ct.* 939, 8 *L. Ed.* 2d 12 (1962) ; *People v. Robertson,* 61 *A. D.* 2d 600, 403 *N. Y. S.* 2d 234 (App. Div. 1978) ; *People v. Tirado,* 47 *A. D.* 2d 193, 366 *N. Y. S.* 2d 140 (App. Div. 1975), aff'd 38 *N. Y.* 2d 955, 384 *N. Y. S.* 2d 151, 348 *N. E.* 2d 608 (Ct. App. 1976).

The inference of knowledge and control of the concealed heroin is further strengthened by the presence of other hereoin-related materials in the apartment. This was true in *Sapp* as well, where, in addition, there were present known narcotics users, as well as some on-going narcotics activity. In this case, glassine envelopes and rubber bands, items used in the packaging and distribution of heroin, were found in Brown's apartment. It is entirely reasonable to infer that the occupant of the apartment could not be ignorant of these items and their special use in heroin traffic. Moreover, unlike *Sapp* where there were many unrelated persons living in a large multi-story house and numerous people present at the same time, here there was little to dissociate or insulate

defendant from the contraband found in his living quarters. It would defy logic and human experience, indeed foist upon the courts an unwarranted naivete, to believe that one, likely aware of the presence of heroin paraphernalia in his own apartment, would be oblivious to the immediate whereabouts of the heroin itself and ignorant of its true nature.

Another important inculpatory circumstance inheres in the fact that the drugs were found in a bedroom, an area usually only accessible to a resident. In *Sapp*, the drugs were found in a dining room. Although Sapp kept his bed in that room, general access to the dining room was likely in view of the number of unrelated persons living in the premises. These factors would tend to weaken the inference of control by defendant. In this case, however, there was no evidence to detract from the natural inference that the narcotics were in areas controlled generally by defendant. An inference of knowledge and control of personalty found in rooms commonly lived in or used by an occupant is well-grounded in our every day experience and is available to a jury as factfinder in a criminal case. See, *e. g., People v. White,* 71 *Cal.* 2d 80, 75 *Cal. Rptr.* 208, 450 *P.* 2d 600 (Sup. Ct. 1969) ; *Mills v. State,* 163 *Ind. App.* 608, 325 *N. E.* 2d 472 (Ct. App. 1975) ; *Villegas v. State,* 509 *S. W.* 2d 314 (Tex. Cri. App. 1974) ; *State v. Flowers,* 12 *N. C. App.* 487, 183 *S. E.* 2d 820 (Ct. App. 1971) ; *cf. State v. Sherwood,* 166 *Wash.* 160, 6 *P.* 2d 595 (Sup. Ct. 1932) ; *Commonwealth v. Ferguson,* 231 *Pa. Super.* 327, 331 *A.* 2d 856 (Super. Ct. 1974). That there was more than one bedroom in the apartment goes merely to the strength of the inference, not its availability.

Still another factor must be added to these incriminating circumstances, the evidence of narcotics traffic. Known and suspected narcotics users were seen frequenting the apartment building over a three-day period immediately prior to the search of defendant's apartment; paraphernalia used for packaging and distributing and selling heroin were found in defendant's apartment; heroin was actually found there, as was another individual, whom it could be inferred had heroin

on his person and had some connection with the heroin and paraphernalia in the apartment. *Cf. State v. Jester,* 68 *N. J.* 87, 90–91 (1975). Hence, a fair inference can be drawn that narcotics traffic took place in defendant's apartment. This, as well as all of the surrounding circumstances, supports the conclusion not only that defendant was in possession of heroin but that his possession was with the intent to distribute it.

■■ The Appellate Division was also influenced by the absence of proof as to ownership of the dress where the packets of heroin were found. Ownership of the dress, and presumably ownership of the heroin, however, would not be a dispositive factor tending to disprove defendant's possession of the heroin, where otherwise sufficiently established. Criminal "[p]ossession signifies intentional control and dominion, the ability to affect physically and care for the item during a span of time", *State v. Davis,* 68 *N. J.* 69, 82 (1975), accompanied by knowledge of its character, *State v. Reed,* 34 *N. J.* 554, 557 (1961); *State v. Reyes,* 98 *N. J. Super.* 506, 512 (App. Div.), *cert.* den. 51 *N. J.* 582 (1968); see *State v. Labato,* 7 *N. J.* 137, 148 (1951); also *State v. Humphreys,* 54 *N. J.* 406, 413–414 (1969). Such possession can be constructive rather than actual. Physical or manual control of the proscribed item is not required as long as there is an intention to exercise control over it manifested in circumstances where it is reasonable to infer that the capacity to do so exists. *State v. Rajnai,* 132 *N. J. Super.* 530, 536 (App. Div. 1975); *State v. Bozeyowski,* 77 *N. J. Super.* 49, 57 (App. Div. 1962), *cert.* den. 374 *U. S.* 851, 83 *S. Ct.* 1916, 10 *L. Ed.* 2d 1071 (1963); *State v. Brown,* 67 *N. J. Super.* 450, 455 (App. Div. 1961); *State v. Campisi,* 42 *N. J. Super.* 138, 145 (App. Div. 1956), rev'd on other grounds 23 *N. J.* 513 (1957). Moreover, possession can be jointly shared by several persons. More than one individual can be possessed of an item at the same time with equal criminal responsibility. *Ulster County Court v. Allen, supra,* —— *U. S.* at ——, 99 *S. Ct.* 2213; *State v. McMenamin,* 133 *N. J. Super.* 521, 524

(App. Div. 1975); *State v. Rajnai, supra; State v. Puckett,* 67 *N. J. Super.* 365, 376 (App. Div. 1960), aff'd 34 *N. J.* 574 (1961). Ownership in conjunction with possession is not a required element of the possessory crime; one can knowingly control something without owning it and be guilty of unlawful possession. Hence, the ownership of the heroin by another would not become relevant unless totally inconsistent and incompatible with the defendant's possession of it, in the sense that the ownership in another would exclude or displace defendant's capacity to control the drugs. See *State v. Riley,* 69 *N. J.* 217 (1976); *State v. McMenamin, supra; State v. Thomas,* 105 *N. J. Super.* 331 (App. Div. 1969), aff'd o. b. 57 *N. J.* 143 (1970). In this case, there is no evidential suggestion that defendant's knowing control over the heroin was blocked or ineffective because it may have belonged to someone else.

The perseveration of the appellate court in focusing upon the absence of potentially relevant evidence seemingly led it to an incorrect assessment of the State's proofs in terms of their sufficiency to support the convictions. Previously, we expressly rejected the formulation set forth in *State v. Donohue,* 2 *N. J.* 381, 390 (1949) that in a criminal case all of the circumstances not only must concur to indicate a defendant's guilt but must also be inconsistent with any other rational conclusion and must exclude "every other hypothesis except that of guilt." *State v. Mayberry,* 52 *N. J.* 413, 436–437 (1968), *cert.* den. 393 *U. S.* 1043, 89 *S. Ct.* 673, 21 *L. Ed.* 2d 593 (1969). *Accord, Jackson v. Virginia, supra,* —— *U. S.* at ——, 99 *S. Ct.* 2781; *Holland v. United States,* 348 *U. S.* 121, 139–140, 75 *S. Ct.* 127, 137, 99 *L. Ed.* 150, 166 (1954). In *Mayberry, supra,* 52 *N. J.* at 436, this Court noted:

This broad expression was never applied literally for if it had been it would have unreasonably defeated many legitimate prosecutions based on circumstantial evidence where it was possible "to devise speculative hypotheses consistent with defendant's innocence". \* \* \* *Id.*

The circumstances proved by the State in this case coalesce sufficiently to enable a rational jury to infer beyond a reasonable doubt knowledge and control on the part of defendant justifying his convictions for the crimes of possession of narcotics and possession with an intent to distribute them. *Cf. Ulster County Court v. Allen, supra,* —— *U. S.* at ——, 99 *S. Ct.* 2213, 4624; *In re Winship, supra.* It is not fatal to the State's case that these, or other speculative circumstances, permit of some other rationale explanation of defendant's conduct or fail to exclude every other conceivable hypothesis except guilt.

This case has many points of factual similarity to *Sapp.* Some of these are the residence or occupancy of defendant, the presence of narcotics in the premises, the close proximity of defendant to the narcotics, the incriminatory potential of the drugs, namely, heroin, and the contemporaneous occurrence of other drug-related activities. We may have been impelled to reach a different result in *Sapp* because of the quality of the shared occupancy in that case. It is also clear, however, that we did not give appropriate weight to the availability of the inferences to be drawn from all of the surrounding circumstances and the jury's right to draw those inferences and to consider them in their totality in concluding that defendant was guilty beyond a reasonable doubt. To that extent, *Sapp* is disapproved and should not be followed for guidance in the future.

## II

■ The Appellate Division concluded, without defendant having raised the issue, that the jury instructions constituted plain error. 157 *N. J. Super.* at 116–117. The court seized upon two specific portions of the charge. At one point the judge had instructed:

If it's on premises over which you exercise control and dominion, you have constructive possession of what's on it. Books on my book shelf, I don't have them in my hands but I can go and take the

book, it's mine. I have possession of it, would be an illustration. On premises or over which you exercise control and dominion, one may be said to have constructive possession.

Later the judge stated:

One may have actual possession on one's person. One may have constructive possession if it's on the premises over which you exercise dominion and control and you can go to it if you want, take it in your hand. That would be constructive possession.

The Appellate Division decided that the jury "may have applied this instruction literally, concluding that since defendant lived in this apartment he constructively possessed all that was in it." *Id.* at 117.

It is clear from a reading of the trial court's instructions in their entirety that all of the essential elements of the crime of possession were explained to the jury. *State v. Wilbely,* 63 *N. J.* 420, 422 (1973) ; see, *State v. Buller,* 27 *N. J.* 560, 595 (1958). A reasonable jury would have understood that the State was required to prove knowledge and control as essential elements of constructive possession. "Reversible error will not be found where the charge, considered as a whole adequately conveys the law and would not confuse or mislead the jury * * *." *Latta v. Caulfield,* 79 *N. J.* 128, 135 (1979) ; see *State v. DiRienzo, supra,* 53 *N. J.* at 379.

Initially the trial judge correctly defined constructive possession as

possession in which the property, though not physically on one's person is so located that he's aware of the presence of the property and is able to exercise intentional control over it, go to it and get it and obtain it.

Then the trial judge noted, "If two or more persons share actual or constructive possession, possession is then said to be joint, that is, if they *knowingly* share control over the article". [Emphasis added]. Also,

The State must prove indeed the substance seized was heroin; two that the defendant *knew* that he possessed or had it under his control; three, the defendant *knew* that he possessed it; four, the defendant *intended* to possess it * * * [emphasis added].

Later the judge remarked:

* * * In addition to intent, possession requires knowledge, that is knowledge by the defendant of the character of that which he possessed. It is possible to possess something without knowing it, but such possession is not possession within the meaning of this law.

The explicit instructions concerning knowledge and control as requirements of constructive possession in the context of the entire charge appear sufficient to overcome any possible confusion.

### III

One other issue raised on appeal but not considered by the Appellate Division relates to the constitutional validity of the search warrant issued in this case. That issue, not having been treated by the Appellate Division, was not a basis for our certification of this case. It is appropriate, therefore, that the appeal be remanded to the Appellate Division for disposition of this issue. We do not retain jurisdiction.

Accordingly, the judgment of the Appellate Division is reversed and the case remanded.

PASHMAN, J., dissenting. I respectfully dissent. Although I concede that resolution of the issue here presented is a most difficult task, in my view the evidence of constructive possession adduced below was insufficient to send the question of defendant's guilt to the jury. The majority's holding to the contrary represents an unwarranted departure from the standards which we recently espoused in *State v. Sapp*, 71 *N. J.* 476 (1976), rev'g on dissenting opinion below, 144 *N. J. Super.* 455, 460 (App. Div. 1975). I would therefore reverse defendant's convictions and remand for entry of judgments of acquittal.

## I

· Defendant in this case was found by the jury to be guilty of possession of heroin and possession with intent to distribute. Since no narcotics were found on his person at the time of arrest, we must determine whether based upon the evidence adduced below a reasonable juror could have concluded *beyond a reasonable doubt* that defendant was in "constructive possession" of the heroin. That is, we must decide whether there was sufficient evidence to establish that defendant had both knowledge of and dominion over the illicit substance. *See, e. g., State v. Davis,* 68 *N. J.* 69, 82 (1975) ; *State v. Reed,* 34 *N. J.* 554, 557 (1961).

It is, of course, impossible to enumerate each and every consideration which may, in a given case, bear upon a finding of constructive possession. Whether a particular defendant knew of or exercised control over narcotics not located upon his person are determinations which necessarily depend upon the totality of the facts and circumstances present in the specific case. Certain factors — those which will likely appear in a large number of situations — can, however, be set forth.

Defendant's relationship to the premises in which the narcotics are found will obviously bear upon his knowledge of their existence and his dominion over them. A permanent resident of a dwelling may more easily be assumed to exercise control over such illegal substances than may a casual visitor. Similarly, knowledge and dominion may more readily be attributed to a sole occupant than to one of many residents. In multi-resident dwellings, the relationship between the occupants is also relevant.

Presence of the illicit material in plain view will also bear upon · defendant's culpability. Where the proscribed narcotics are unconcealed, one can generally infer that the defendant knew of their existence. Dominion, however, may still have to be demonstrated by other means. Plain view combined with sole presence at the time of the arrest, for

example, would create a strong case for constructive possession. Conversely, mere presence in the household with numerous other persons would, without more, be insufficient. *See State v. Sapp, supra.*

In many cases the critical factor will be defendant's relationship to the particular place within the dwelling where the narcotics are located. If they are found in an area peculiarly within defendant's control, such as among his personal effects, a strong inference of possession arises. Although it is not necessary that the area be under defendant's exclusive domain, the strength of the presumption will obviously vary with the location's accessability to others. Conversely, culpability will be more difficult to establish where the narcotics are found in an area controlled by someone other than the defendant.[1]

Other considerations bearing upon the issue of constructive possession include: (1) the nature of the narcotic, its traffic and use; (2) the presence of narcotics paraphernalia in areas indicating defendant's knowledge thereof or dominion thereover; (3) the consistent presence of known narcotics users on the premises; (4) the quantity of the drug found; (5) defendant's proximity to the drugs at the time of search or arrest; and (6) incriminating statements or actions. At bottom, the judge must evaluate the evidence by looking at the totality of circumstances in the light of practical experience.

---

[1]The majority states that "ownership of the [drug] by another *would not become relevant* unless totally inconsistent and incompatible with the defendant's possession of it * * *." See *ante* at 598. Its conclusion in this regard is simply erroneous. Although ownership of the drug is clearly not a necessary or controlling factor in a constructive possession case, it is just as obvious that ownership by another person will in many cases negate inferences of control. Thus ownership is a relevant factor which the jury may assess even where that ownership is not such as totally excludes the possibility of defendant's control.

## II

Turning to the facts of this case, it is clear that the State's case suffered from many substantial weaknesses. The prosecution did not demonstrate that defendant was the sole resident of the apartment or attempt to show his relationship to any other occupants who may have there resided. The State provided no testimony linking defendant to the particular bedroom where the narcotics were found. It failed to even suggest ownership of the dress in which they were hidden. Further, the prosecution neglected to demonstrate that the narcotics paraphernalia were found in areas over which defendant had dominion or where he was sure to know of them. Finally, the State failed to address Wallace Young's relationship to the apartment, although he was present in the dwelling at the time of the arrest, and inexplicably never established the nature of the white powder found upon his person. These deficiencies are particularly troublesome because they could have been avoided, at least in part, by more thorough investigation and preparation on the part of the police and prosecution.

In light of these glaring weaknesses, I cannot accept the conclusion that there was sufficient evidence for a jury to conclude *beyond a reasonable doubt* that defendant was guilty of possession and possession with intent to distribute. The majority's finding to the contrary is based upon a series of inferences which clearly cannot satisfy the heavy burden required of the prosecution in criminal matters.

The majority's attempt to distinguish this case from *Sapp* is unconvincing. In fact, a comparison of the two cases reveals a close similarity. In neither case did the prosecution demonstrate that the dwelling was tenanted solely by the defendant. In both cases, individuals known to be involved in the narcotics trade were noted about the premises.[2]

---

[2]It should also be noted that the three known users involved in this case were only seen to enter the apartment complex and not defendant's apartment specifically.

Narcotics paraphernalia were, as the majority acknowledges, found in each of the premises. Moreover, in both instances other individuals located within the dwelling at the time of arrest were found to have narcotic substances upon their persons.[3] Finally, heroin was involved in *Sapp* as well as here.

The differences between this case and *Sapp* are also instructive. There, the narcotics were found in the very room in which the defendant slept. Moreover, they were, at least in part, open to plain view at a time when defendant was in the room. Here, the heroin was hidden in a dress of unknown ownership in a bedroom to which defendant's connection was never established.[4] The narcotics paraphernalia

---

[3]In *Sapp* one person was found attempting to swallow 21 glassine envelopes of heroin while the search of another individual revealed a methadone biscuit in his coat. Further, it should be noted that the white powder found in this case in Wallace Young's pants pocket was never proven to be a narcotic. Thus, the majority again relies upon an entirely unsubstantiated assumption.

[4]Cases in other jurisdictions have held that acquittal must be ordered where defendant's connection to the place where the narcotics are located cannot be established. *See, e. g., Smith v. State,* 279 *So.* 2d 27 (Fla. Sup. Ct. 1973) (husband acquitted where narcotics were found in master bedroom among wife's possessions) ; *Jordan v. State,* 344 *So.* 2d 1294 (Fla. Dist. Ct. App. 1977) (defendant cannot be convicted where drugs were found in apartment which he shared with one roommate) ; *Garrison v. State,* 272 *Md.* 123, 321 *A.* 2d 767 (Ct. App. 1974) (wife with recent needle marks acquitted of heroin possession where husband was found flushing large quantity of heroin down toilet while wife was in nearby room) ; *Barksdale v. State,* 15 *Md. App.* 469, 291 *A.* 2d 495 (Ct. Spec. App. 1972) (male "friend" with fresh needle marks not culpable where eight glassine bags of heroin found in female companion's purse, 20 bags in her cigarette case and 46 bags inside her vagina) ; *Puckett v. State,* 13 *Md. App.* 584, 284 *A.* 2d 252 (Ct. Spec. App. 1971) (husband who was often away from home acquitted where wife grew 16 marijuana plants in backyard) ; *Scott v. State,* 7 *Md. App.* 505, 256 *A.* 2d 384 (Ct. Spec. App. 1969) (narcotics found in sister's purse in home where both resided insufficient to establish defendant's guilt even where he was found in possession of other narcotics) ; *Com-*

involved in *Sapp* were plentiful and were located in areas
clearly implicating defendant's knowledge thereof. In the
present case, no evidence as to the location of the para-
phernalia was ever introduced. Thus, the evidence here is
even less sufficient than in *Sapp* and acquittal more clearly
mandated.

The majority's holding to the contrary is predicated upon
the conclusion that in this case "the quality of the shared
occupancy of the premises" differed from that extant in
*Sapp*. This finding on the majority's part is somewhat
puzzling, given that no evidence was adduced below bearing
upon the "quality of the shared occupancy" in the Brown
residence. As detailed *supra,* the prosecution presented no
proof relating to the number of individuals who lived in
the apartment in question. Nor did it even attempt to
demonstrate defendant's relationship to any other persons
who may have there resided.[5] Thus, the majority has upheld
defendant's convictions because of the "quality" of his shared
occupancy despite the fact that this "quality" cannot be
ascertained from the record below. In effect, the majority
has ruled that defendant bears the burden to show that his
living arrangement was similar to that involved in *Sapp*. In
so doing, it has ignored the long established principle that
the State must prove defendant's guilt beyond a reasonable

---

*monwealth v. Hannan*, 229 *Pa. Super.* 540, 331 *A.* 2d 503 (Super.
Ct. 1974) (husband acquitted where narcotics were found in master
bedroom in wife's purse and dresser).

Ownership of the dress is thus relevant not because of any neces-
sity for showing ownership of the drug, *see* n. 1, *supra*, but rather
for the obvious proposition that one is more likely aware, and in
control, of substances located in one's possessions than in the cloth-
ing of others.

[5] It should be noted that another person, not present at the time
of arrest, was separately indicted for the same crimes and that the
lease to the apartment was apparently in that other person's name.
This, along with the presence of at least one non-masculine item of
clothing — that is, the dress — indicates that defendant was likely
not the sole tenant.

doubt. Defendant is not required to prove his freedom from guilt. *See In re Winship,* 397 *U. S.* 358, 90 *S. Ct.* 1068, 25 *L. Ed.* 2d 368 (1970).

Perhaps in recognition of the absurdity of attempting to distinguish this case from *Sapp,* the majority proceeds to overrule that decision in part. In the words of the majority, *Sapp* is "disapproved" to the extent that it

did not give appropriate weight to the availability of the inferences to be drawn from all of the surrounding circumstances and the jury's right to draw those inferences and to consider them in their totality in concluding that defendant was guilty beyond a reasonable doubt.

[*Ante* at 599]

The majority's holding in this regard is unsound in at least two respects. First, it is unclear what portion of *Sapp* the majority is in fact overruling. Is the result of that case "disapproved"? Or, rather, is its flaw the manner in which that result was reached? If the latter, which part of its reasoning is no longer to be followed? The lack of clarity in the majority's holding will merely serve to confuse trial judges in their effort to apply the law in this area.

Second, and more importantly, the majority errs in departing at all from the approach which we endorsed in *Sapp.* In my view, defendant's presence with other persons in a dwelling in which narcotics are found cannot without more constitute sufficient evidence to support a conviction for possession of those narcotics. *State v. Sapp, supra.* The majority's contrary conclusion elevates the fear of judicial "naivete" above the presumption of innocence as well as the burden of proof required of the State in criminal prosecutions. It thus appears to reverse what I had thought was a deeply engrained constitutional principle — "that it is far worse to convict an innocent man than to let a guilty man go free." *In re Winship,* 397 *U. S.* 358, 372, 90 *S. Ct.* 1068, 1077, 25 *L. Ed.* 2d 368, 380 (1970) (Harlan, J., concurring). *See Speiser v. Randall,* 357 *U. S.* 513, 525–526, 78 *S. Ct.* 1332,

1341–1342, 2 *L. Ed.* 2d 1460, 1472 (1958). *See generally* Underwood, "The Thumb on the Scales of Justice: Burdens of Persuasion in Criminal Cases," 86 *Yale L. J.* 1299 (1977). In my view, this is a difficult case in which that well-established axiom should govern.

For the foregoing reasons, I would affirm the judgment of the Appellate Division and remand for entry of judgments of acquittal.

Justice CLIFFORD joins in this dissenting opinion.

*For reversal and remandment*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, SCHREIBER and HANDLER—**5.**

*For affirmance*—Justices PASHMAN and CLIFFORD—**2.**