Mary Bracken POLK, Appellee,

v.

MONTGOMERY COUNTY, MARYLAND; Department of Corrections and Rehabilitation of Montgomery County, Maryland; Denise Dodson, Individually and as Receiving Officer for Plaintiff at Seven Locks Detention Center, Appellants.

and

Montgomery County Police Department; Bernard D. Crooke, Individually and as Chief of Police, Montgomery County, Maryland; Joseph Beddick, Officer, Montgomery County Police Department; Gary B. Blake, Individually and as Director of Montgomery County Department of Corrections and Rehabilitation; Samuel F. Saxton, Individually and as Warden of Seven Locks Detention Center; Rosa Lynn, Individually and as Supervising Matron of Seven Locks Detention Center; James A. Young, Individually and as Sheriff of Montgomery County, Maryland, Defendants,

Class Denominated Vivian A. Smith, et al., amicus curiae.

Mary Bracken POLK, Appellant,

v.

MONTGOMERY COUNTY, MARYLAND; Department of Corrections and Rehabilitation of Montgomery County, Maryland; Gary B. Blake, Individually and as Director of Montgomery County Department of Corrections and Rehabilitation; Samuel F. Saxton, Individually and as Warden of Seven Locks Detention Center; Rosa Lynn, Individually and as Supervising Matron of Seven Locks Detention Center; Denise Dodson, Individually and as Receiving Officer for Plaintiff at Seven Locks Detention Center, Appellees,

Class Denominated Vivian A. Smith, et al., Amicus Curiae.

Nos. 84-2205(L), 84-2206.

United States Court of Appeals,
Fourth Circuit.

Argued May 8, 1985.

Decided Feb. 6, 1986.

L. Palmer Foret, Edward J. Walinsky (William J. Carter, Carr, Goodson & Lee, P.C., Washington, D.C., on brief), for appellees/cross-appellant.

Ellen J. Flannery (Clausen Ely, Jr., Anne V. Simonett, Covington & Burling, Arthur B. Spitzer, Elizabeth Symonds, Washington, D.C., on brief), for amicus curiae.

Before MURNAGHAN, ERVIN and SNEEDEN, Circuit Judges.

SNEEDEN, Circuit Judge.

Mary Bracken Polk, the plaintiff, was arrested at her home, pursuant to a bench warrant, for failure to obtain a Maryland driver's license, failure to make a court appearance, and failure to comply with the conditions of a bond. She was incarcerated at the Montgomery County Detention Center (MCDC) and was subjected to a visual strip search. During the search, she was required to remove all of her clothing and squat while a female correctional official visually inspected her.

Polk argues that the strip search conducted by the MCDC defendants violated the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, and she seeks damages under 42 U.S.C. § 1983. We do not reach the merits of her constitutional claim. The district court held that the constitutionality of the MCDC strip search policy had been decided against the defendants in the similar case of *Smith v. Montgomery County*, 573 F.Supp. 604 (D.Md.1983). The district court applied the doctrine of offensive collateral estoppel against the defendants [1]

Carole A. Jeffries, Suzanne Levin (Jeffries & Levin, P.C., Silver Spring, Md., on brief), for appellants/cross appellees.

1. The named defendants in this case are: Montgomery County, Maryland; Montgomery County Department of Correction and Rehabilitation; Gary R. Blake, Director of the Montgomery County Department of Correction and Rehabilitation; Samuel F. Saxton, Director of the MCDC; Rosa Lynn, supervisor of the MCDC Women's Section; Denise A. Dodson, a female correctional officer employed at the MCDC; Montgomery County Department of Police; Bernard Crooke, Chief of Police; Police Officer Joseph Beddick; and Sheriff Joseph Young. Each of the individual defendants has been sued in both his or her official and individual capaci-

and ruled in favor of Polk. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (collateral estoppel may be applied offensively to bar a defendant from relitigating issues that defendant previously litigated against another plaintiff). The district court erred in applying offensive collateral estoppel to this case, and we reverse and remand for proceedings consistent with this opinion.

## I.

Polk was arrested at her home by Officer Joseph Beddick on January 26, 1981, pursuant to a bench warrant issued by a Montgomery County state district court judge. Polk was arrested for failure to obtain a Maryland driver's license. MCDC claims that she was transported from her home to the Silver Spring District Police Station, where she appeared before District Court Commissioner Everett Wadford to be advised of her rights and for a pre-trial determination to be made. Polk claims that on the night of her arrest, she was not taken before a judicial officer. MCDC alleges that Commissioner Wadford signed a document committing Polk, pending a hearing, and that Officer Beddick transported Polk to MCDC pursuant to Wadford's pre-trial release determination. Polk claims that she told Beddick that the arrest was a mistake, but she was nevertheless transported to MCDC.

Polk was committed to the custody of MCDC officials at 8:22 P.M. on January 26, 1981. MCDC claims that Polk was escorted by Denise Dodson, a female correctional officer who took Polk to the Women's Section Receiving and Discharge (R & D) Room. Dodson claims she conducted a visual strip search of Polk and that no other person was in the R & D room other than Polk and Dodson. Polk alleges that another inmate was present in the room at the time of the search.[2] Polk alleges that she showered and washed her hair before the search, and that during the search, a guard checked her hair, told her to squat, and visually inspected her anus. Polk claims that she was never frisked prior to the search.

MCDC states that Polk was allowed to make one telephone call to her son, Tommy Polk. Polk was taken to a cell and locked up for the night. It is not clear from the record if she was alone in the cell or had a cell mate.

On the morning of January 27, 1981, Polk was interviewed by an MCDC correctional officer and then taken to court. She apparently appeared for a bond review hearing at court, and according to MCDC, her bail was reduced from $5,000 to $250 and 10% ($25.00) was paid by Polk. Polk and MCDC both agree that Polk was released from MCDC on January 27, 1981, at approximately 1:33 P.M.

MCDC is a medium security adult detention facility that houses convicted offenders sentenced to its custody for a period of eighteen months or less, convicted offenders awaiting sentencing, and pre-trial detainees. MCDC concedes that it has a policy of conducting a visual strip search of all arrested persons, including those persons who are temporarily detained at the center. An arrestee is required to remove all her clothes and to bend and squat to permit a visual search of her anal and genital cavities. Both men and women are housed at MCDC, but the intake units are separate. MCDC claims that the room in which women are strip searched is approximately 15 feet by 20 feet and that it consists of a cell with two bunks, a shower, a toilet, a counter, and a bench. MCDC states that there is another housing unit which consists of ten double-bunk cells and that three of those cells are used to house newly incar-

---

ties. The district court granted Defendant Joseph Young's Motion to dismiss and judgment was entered in favor of Defendant Young. *Polk v. Montgomery County, Maryland,* 548 F.Supp. 613 (D.Md.1982).

**2.** The district court, in granting Polk's summary judgment motion on collateral estoppel grounds, did not resolve any factual disputes. Thus, it is not known if Polk was strip searched in private or with other inmates. It is not clear if Polk was taken before a judicial officer on the night of her arrest.

cerated inmates whether convicted or pre-trial. MCDC states that these cells open onto a day room and that new pre-trial arrestees are thus able to intermingle with the total prison population. The justification given by MCDC for the necessity of searching every arrestee who is to be housed at the facility is that the arrestees intermingle with the prison population and are able to infiltrate contraband and weapons into the jail population.

## II.

This case comes before us in an unusual procedural posture and requires us to explain the history of another case—*Smith v. Montgomery Co.*, 547 F.Supp. 592 (D.Md. 1982). We review the facts in both the *Smith* case and the *Polk* case to show that it would be imprudent for us to decide the merits of an important constitutional question without the record of the actual case—*Smith v. Montgomery Co.*—upon which the question was decided and without any factual findings in the case before us.

Vivian Smith, in a separate class action suit, also challenged the constitutionality of the MCDC strip search policy. Polk's and Smith's actions were proceeding simultaneously in the United States District Court for the State of Maryland. Polk filed her action before the class action was filed.

On November 12, 1981, at approximately 10:00 P.M., Vivian A. Smith was arrested in her home in Montgomery County, on a charge of contempt of court for failure to appear in Montgomery County Circuit Court on October 28, 1981, in connection with a child support matter originating in New Jersey. Ms. Smith failed to appear in Maryland because the New Jersey child support proceeding had been dismissed as of October 15, 1981. She was taken to the Rockville District police station, where she was photographed and an arrest report was filed. Ms. Smith was then transported to MCDC and taken directly to the Women's R & D room.

Pursuant to the Montgomery County policy requiring a strip search of all persons detained or held at the MCDC, Smith was required to remove all her clothes and allow a visual search of her anal and genital cavities. No weapons or contraband were found. This strip search was the first and only search of any kind to which Smith was subjected from the time of her arrest, some two hours earlier, until the time of her release on November 13 at approximately 3:00 P.M.

The strip search of Smith was conducted in the presence of another female detainee, who was in the holding cell in the room. Following the strip search, the plaintiff was required to shower and then was placed in the holding cell with the other female detainee. The next day, the charge against Smith was dismissed.

Smith's suit was a class action against Montgomery County and its officials, under 42 U.S.C. § 1983. Smith alleged that the County's policy of indiscriminately strip searching all persons temporarily detained at the MCDC violated the Fourth Amendment. The class sought declaratory, injunctive, and monetary relief. The *Smith* case was initially assigned to Judge Shirley Jones, who granted the motion for a preliminary injunction on September 13, 1982. *See Smith v. Montgomery County*, 547 F.Supp. 592 (D.Md.1982).

Judge Jones issued a preliminary injunction that enjoined the MCDC defendants from strip searching "temporary detainees" except if the correctional official had probable cause to believe that the detainee had concealed a weapon or contraband upon his or her person. A "temporary detainee" was defined as follows:

> [P]ersons arrested and held overnight or for another short period before appearing before a judicial officer and those waiting to be released while bond is posted, a relative comes, or the like. It does not include all pretrial detainees, for example, those who are unable to make bond and are being held for a matter of weeks or months until trial.

*See Smith v. Montgomery Co.*, 547 F.Supp. 592, 593 n. 2 (D.Md.1982).

Smith later filed a motion for an order declaring that the defendants had not complied with the preliminary injunction. She alleged that the defendants had continued to strip search temporary detainees who had been before a commissioner and were being held for a matter of hours pending the posting of bond or satisfaction of other release conditions. Smith contended that the defendants were complying only with the part of the injunction that prohibited strip searches of temporary detainees who had not appeared before a judicial officer prior to their arrival at the MCDC.

After Judge Jones resigned from the bench, Judge Young was assigned to the *Smith* case. Judge Young dissolved the preliminary injunction, and on October 26, 1983, issued the lower court decision that constitutes the *Smith* case. *See Smith v. Montgomery Co.*, 573 F.Supp. 604 (D.Md. 1983).

In dissolving the preliminary injunction, Judge Young dismissed as moot plaintiff's motion for an order declaring noncompliance with the preliminary injunction. He found that the named plaintiff lacked standing to seek either declaratory or injunctive relief in light of the intervening Supreme Court decision in *Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). For the same reason, the district court denied Smith's motion for partial summary judgment seeking permanent injunctive relief. The court denied the defendants' motion to dismiss and alternative motion for summary judgment, and held that the defendants' "indiscriminate strip search policy and failure to conduct strip searches in private is unconstitutional."

The district court granted plaintiff's motion for certification of a damages class. That class was defined as:

All persons who were 'temporary detainees' at the Montgomery County Detention Center ("MCDC") since May 20, 1979, and were strip searched absent probable cause to believe that they possessed either weapons or contraband. The term 'temporary detainees' is defined to include all persons arrested and held for 24 hours or less.

Defendants appealed from the district court's October 1983 order in *Smith*, and plaintiffs filed a protective cross-appeal on issues relating to the denial of injunctive relief. On February 6, 1984, plaintiffs moved to dismiss defendants' interlocutory appeal. After full briefing and oral argument, this court concluded that defendants' appeal was premature. Accordingly, defendants' appeal and plaintiffs' cross-appeal were dismissed for lack of appellate jurisdiction. *See Smith v. Montgomery County*, 740 F.2d 963 (4th Cir.1984) (unpublished opinion).

After Judge Young's decision in *Smith*, Judge Harvey issued the opinion in *Polk v. Montgomery*. In an opinion dated January 31, 1984, Judge Harvey denied defendants' motion for summary judgment. Following that decision, Polk filed a motion for summary judgment based upon the applicability of the doctrine of collateral estoppel. In an opinion dated April 24, 1984, Judge Harvey granted plaintiff's motion for summary judgment on collateral estoppel grounds. On September 17, 1984, the parties agreed to the entry of a consent judgment in the amount of $15,000.00 plus costs. The consent judgment was entered without prejudice to the right of defendants to appeal the district court's prior ruling on the question of liability.

### III.

Polk argues that the sole issue before us is whether the district court correctly applied the doctrine of collateral estoppel. Despite this argument, Polk insists that "under any applicable standard," the strip search was unconstitutional, and that the case of *Logan v. Shealy*, 660 F.2d 1007 (4th Cir.1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982), is directly on point. Thus, Polk would have us find that the application of collateral estoppel was correct or she would have us find that it was incorrect to use collateral estoppel and reverse and remand for the district court to address the merits. In the alternative, she

would have us affirm on the grounds that the strip search policy is unconstitutional *per se* under the rule established in *Logan v. Shealy.* Additionally, if we reach the merits, Polk has filed a cross-appeal on several issues that were decided against her below.[3]

The MCDC defendants, on the other hand, argue that the district court incorrectly applied the doctrine of offensive collateral estoppel to them because the judgment in the *Smith* case was not sufficiently final in that it has not been affirmed on appeal. The defendants also argue that instead of remanding the case, we should reverse the district court and find that the policy of strip searching arrestees, as applied to Polk, was constitutional. We find that the doctrine of collateral estoppel was applied prematurely in this case. We remand the case to the district court, where it may address the constitutional issue *ab initio* or it may hold the case in abeyance pending a final judgment in the *Smith* case.

### IV.

A trial judge has broad discretion in determining whether to apply offensive collateral estoppel. *Parklane Hosiery v. Shore,* 439 U.S. at 331, 99 S.Ct. at 651. However, the court must weigh the following factors:

(1) The party against whom the estoppel is asserted must have been a party or in privity with the party in the prior action.

(2) There must have been a final determination of the merits of the issues to be collaterally estopped.

(3) The issues decided in the prior action must have been necessary, material, and essential to the prior case.

(4) The party against whom the estoppel is to be applied must have had a full and fair opportunity to litigate the issues.

(5) The issues in the prior litigation must be identical to the issues sought to be estopped.

*See GAF Corp. v. Eastman Kodak Co.,* 519 F.Supp. 1203 (S.D.N.Y.1981). We note that several of these factors are missing in the present case.

The decision in *Smith* is not sufficiently final at this time to permit Polk to use the case to preclude issues at her trial. The *Smith* class action is still pending in district court. The court in *Smith* has changed the definition of the class once and conceivably the trial judge may modify the definition again. *See Smith v. Montgomery County,* 573 F.Supp. at 612.[4] In brief, *Smith* concerns a complicated class action open to modification at the trial court level and is therefore insufficiently final to warrant its use as a collateral estoppel sword.

Furthermore, we cannot ascertain from the record whether the facts and issues in *Polk* and *Smith* are identical. The *Smith* case was decided on the basis of stipulated facts. No factual findings have been made in the *Polk* case. In *Smith,* for example, the named plaintiff was strip searched in the presence of another female detainee. *Smith v. Montgomery County,* 547 F.Supp. at 594. The strip search of Polk may or may not have been conducted in private. This fact is especially relevant in determining whether a strip search is reasonable under the circumstances. *See Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (each case requires a balancing of the need for the search against the invasion of the personal rights

---

**3.** Polk cross-appealed on two issues that were decided against her by the district court. The district court granted two defendants' summary judgment motions on the grounds that they were entitled to a good faith immunity defense, and also denied Polk's motion to amend the complaint to include a claim against certain court employees for an alleged negligent issuance of a bench warrant. We do not reach these cross-appeal issues in light of the fact that

we have decided to remand the case back to the district court.

**4.** *See also Luben Industries v. United States,* 707 F.2d 1037, 1039–40 (9th Cir.1983) (court approves refusal to give collateral estoppel effect to decision rendered in first part of bifurcated trial even though the ruling in the prior action did not appear to be tentative.)

that the search entails); *see also Logan v. Shealy*, 660 F.2d 1007 (4th Cir.1981) (indiscriminate strip search policy cannot be justified simply because of administrative ease). Thus, on the basis of this record, we cannot ascertain whether the issues in the prior litigation are identical with the issues sought to be estopped.

■ Additionally, we note that Polk had the opportunity to join in the *Smith* case as a class member. Although she raised some separate law claims, Judge Harvey dismissed those claims on January 31, 1984, thus permitting Polk to join the class action rather than continuing her separate suit.[5] The Supreme Court in *Parklane Hosiery* admonished trial court judges to restrict the use of collateral estoppel:

> The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.

439 U.S. at 331, 99 S.Ct. at 652.

The passage quoted above contains another reason to deny the application of offensive collateral estoppel. Use of the procedural device may be unfair to the defendants in this instance. To permit a plaintiff who declines to join a class action brought under Rule 23(b)(3) of the Federal Rules of Civil Procedure to later apply collateral estoppel to a prior favorable judgment rendered in the class suit could burden the defendants with multiple suits[6] and may be contrary to the notion of promoting judicial efficiency.[7] *See generally*

*Sarasota Oil Co. v. Greyhound Leasing & Financial Corp.*, 483 F.2d 450, 452 (10th Cir.1973); 7A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1789 (Supp.1983); *Restatement (Second) of Judgments* § 42, comment d, illustration 6 (1980).

### V.

For the reasons stated above, we believe that the trial court erred in permitting the application of offensive collateral estoppel in this case. We therefore reverse and remand for proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

**5.** Polk admits that she falls squarely within the bounds of the class as defined in the *Smith* case. Brief of Appellees at 12.

**6.** *See* Note, *Offensive Assertion of Collateral Estoppel by Persons Opting Out of a Class Action,* 31 HASTINGS L.J. 1189, 1195 (1980) (widespread offensive use of collateral estoppel may subject the party estopped to multiple and vexatious liabilities.)

**7.** *See* Note, *supra* note 5 at 1195. Judicial economy may be thwarted when persons who could

have been plaintiffs in prior class actions stand on the sidelines to collect favorable judgments for use in later suits because this necessitates multiple actions. *Id.* Admittedly, the fact that Polk filed her suit before the *Smith* action began tends to negate the notion that she was poised on the sidelines of the class suit. However, Polk did have ample opportunity to join in the class action at a relatively early stage in the litigation and thereby eliminate the need to have separate trials for arguably similar claims.