Mary Bracken **POLK**

v.

**MONTGOMERY COUNTY, MARYLAND, et al.**

**Civ. No. Y–82–194.**

United States District Court, D. Maryland.

July 5, 1988.

L. Palmer Foret, Rockville, Md., for plaintiff.

Suzanne Levin, Carole A. Jeffries, Silver Spring, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, Senior District Judge.

Plaintiff brought this action under federal and state law seeking monetary damages of $2,700,000 for having been subjected to a visual strip search at the Montgomery County Detention Center. Prior to a jury trial, defendants stipulated that the search was unconstitutional. At trial, the jury was instructed to return a verdict against the defendant county; after deliberation, the jury awarded plaintiff one dollar in damages. On her civil rights claim against defendant Denise Dodson, the matron who conducted the search, the jury returned a verdict for defendant Dodson. Plaintiff then filed an appeal, but has petitioned the Court pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, which provides that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as a part of the costs." In her petition, plaintiff notes that her attorneys provided representation on a contingent fee basis and requests award for their time and expenses totalling $113,107.31. The Court finds that such a award would be wholly unjustified considering the nominal recovery and the opportunity which plaintiff had to join a successful class action on identical issues.

Review of the histories of this litigation and a related class action is important to an understanding of the unjustness of a large award of attorney's fees. On January 26, 1981, plaintiff was arrested for failure to appear on a traffic citation. She was taken to the Montgomery County Detention Center and was subjected to a routine visual strip search prior to her overnight detention. On October 7, 1981, the Fourth Circuit issued its opinion in *Logan v. Shealy*, 660 F.2d 1007, holding that "an indiscriminate strip search policy routinely applied to all detainees ... cannot be constitutionally justified simply on the basis of administrative ease...." 660 F.2d at 1013. Plaintiff filed the instant suit on January 25, 1982.

## THE *SMITH* CLASS ACTION

On May 20, 1982, Vivian Anderson Smith brought a virtually identical action in this District for injunctive relief and damages on behalf of herself and all other persons who were strip searched in Montgomery County under the routine strip search policy then still in effect. In that case, Civil No. 83-1323, a preliminary injunction was issued on September 13, 1982, barring defendants from performing such visual strip searches "except upon probable cause to believe such detainee has weapons or contraband concealed on his or her person." *Smith v. Montgomery County,* 547 F.Supp. 592, 599. By letter dated August 3, 1983, this Court noted that *Logan* was controlling and that Montgomery County's "indiscriminate strip search policy and failure to conduct strip searches in private are unconstitutional." The injunction was then lifted and a retrospective damages class was certified by the Court on October 26, 1983, *Smith v. Montgomery County,* 573 F.Supp. 604, and its scope was refined on September 8, 1986, to include persons for whom there existed no "reasonable suspi-

cion"—indicated by the alleged felony, or weapon or contraband related misdemeanor for which they were arrested. *Smith v. Montgomery County*, 643 F.Supp. 435, 439. On March 31, 1988, four days before the scheduled date of a consolidated trial with *Polk*, counsel in the class action concluded a settlement with defendants. The terms of the *Smith* settlement tentatively approved by the Court on March 31, 1988, provide for an award of between $1200 and $2500 for each class member, depending on the number of class members.

### THE *POLK* LITIGATION

*Polk* was reassigned to Judge Harvey who postponed trial to accomodate motions to amend and for summary judgment. Memorandum to file dated June 15, 1983. On August 18, 1983, Polk's attorney wrote to Judge Harvey seeking approval of additional briefing in opposition to defendants' summary judgment motion on the basis of developments in *Smith* and enclosed this Court's letter dated August 3, 1983, which recognized the unconstitutionality of Montgomery County's routine strip search policy. By memorandum and order dated January 31, 1984, Judge Harvey dismissed plaintiff's claims against several defendants, thus narrowing the action to plaintiff's civil rights and state law claims against the Montgomery County, its Corrections Department, and defendant Dodson.

By letter dated February 9, 1984, Polk's attorney requested that defendants' counsel give Polk notice of the *Smith* class action and "be given an opportunity to become a member of the class as certified by Judge Young in Civil No. Y–82–1323." After a status conference and additional briefing, Judge Harvey issued a memorandum and order on April 24, 1984, granting summary judgment for plaintiff on the issue of the unconstitutionality of defendants' strip search policy, based on the doctrine of offensive collateral estoppel, because the issue had already been determined in the *Smith* case. In a memorandum to this Court dated May 30, 1984, it was noted that Polk had opted out of the *Smith* class, and in a subsequent memoran-

dum dated June 8, 1984, that Lori Lehner, who had brought a similar action in *Lehner v. Montgomery County*, Civil No. 82–2790, had opted into the *Smith* class.

Polk's action was scheduled for trial on September 17, 1984, but was settled before trial with right of appeal preserved and a consent judgment of $15,000 for plaintiff was entered on that date. Appeals were taken. On February 6, 1986, the Fourth Circuit Court of Appeals ruled that the application of offensive collateral estoppel in *Polk* based upon the ruling in *Smith* was improper. *Polk v. Montgomery County*, 782 F.2d 1196. On remand, Judge Harvey notified counsel in *Polk* that the case was reassigned to this Court.

The case remained dormant. By letter to the Court dated September 4, 1987, plaintiff's counsel indicated to the Court that Polk would not opt into the *Smith* class, and requested that the case "remain in its current posture and await further developments in the *Smith* matter." The Court noted this in its October 9, 1987 memorandum and order in *Smith v. Montgomery County*, 117 F.R.D. 372, 375 n. 3. When defendants then moved to consolidate *Polk* with *Smith*, Polk opposed consolidation. The Court, by letter dated November 20, 1987, noted that Polk had apparently delayed resolution "in search of some tactical advantage awaiting the outcome of the class action on the damages issue." Therefore, the Court notified counsel that consolidation would be ordered if defendants stipulated to liability, *i.e.*, that the county policy under which Polk was strip searched was unconstitutional, in order to correct the defective estoppel ruling which had been reversed by the Fourth Circuit.

At the consolidated pre-trial conference, Polk's attorney indicated that he would adopt the pre-trial order submitted by plaintiffs' counsel in *Smith* and subsequently offered amendments of expert witnesses by letter dated March 24, 1988. Counsel in the *Smith* class action reached settlement on March 31, 1988; however, defendants' offer to settle the *Polk* case for $31,000 was rejected. At trial, defendants stipulated that the indiscriminate strip

search policy was unconstitutional. Plaintiff then presented evidence of damages related to the visual strip search and evidence that the search was not conducted in private—an element of liability in plaintiff's civil rights claim against defendant Dodson. Plaintiff presented no evidence or argument relating to the state law claims. The Court then instructed the jury that the Court had already resolved the liability issue in favor of the plaintiff and that "the jury must award plaintiff some amount of money for any injuries which you find to have been caused by the strip search which, in this case, was unconstitutional." The jury awarded one dollar for plaintiff against Montgomery County and found for defendant Dodson on the privacy issue. Judgment was entered in accordance with the verdict and plaintiff's motion for a new trial was denied by letter dated April 22, 1988.

## AWARD OF ATTORNEY'S FEES

In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court recognized that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." 461 U.S. at 433, 103 S.Ct. at 1939 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). The Court noted that this "generous formulation ... brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'" 461 U.S. at 433, 103 S.Ct. at 1939. Although the Court recognized twelve relevant factors useful in making such a determination, *id.* at 430 n. 3, 103 S.Ct. at 1937 n. 3, it emphasized that "the most critical factor is the degree of success obtained." *Id.* at 436, 440, 103 S.Ct. at 1941, 1943. The dissenting opinion agreed that the extent of success was a crucial factor, and that success is measured by the achievement of some benefit sought by the plaintiff. *Id.* at 441, 103 S.Ct. at 1943.

The four justices dissenting in *Hensley* authored the plurality opinion in *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct.

2686, 91 L.Ed.2d 466 (1986). That opinion held that fee awards could exceed the damages won by plaintiff and approved a fee award of $245,456.25 on the basis of a damage award of $33,350. The plurality rejected a strict rule of proportionality which would ignore the role of a civil rights plaintiff as a "private attorney general." "Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards." 106 S.Ct. at 2694. Thus, upon a brief analysis of legislative history, the plurality reasoned that "Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief ... and [that awards] *not be reduced because the rights involved may be nonpecuniary in nature.*" *Id.* 106 S.Ct. at 2695 (quoting S.Rep. No. 94–1011 (1976) at 6). The *Rivera* plurality also emphasized the holding of *Hensley* that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee" and that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." 106 S.Ct. at 2692 (quoting *Hensley*, 461 U.S. at 435). Justice Powell, who authored the majority opinion in *Hensley*, concurred in *Rivera*, but rejected the expansive scope of the plurality opinion, reasoning that although *Hensley* did not require proportionality, it did require that "a district court ... is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Id.* at 2700.

With regard to Polk's petition for attorney's fees, the Court is obligated to find plaintiff the "prevailing party" because plaintiff did succeed on liability, a "significant issue in litigation," resulting in a monetary award which constituted "some of the benefit [plaintiff] sought in bringing suit." In addition, the Court is satisfied that, although the presentation of attorney time and expenses is not a model of clarity, the attorney rates of compensation are reasonable and the hours expended and direct expenses are accepted by the court as an

accurate "lodestar" figure. However, the Court finds that the *de minimis* jury award for plaintiff requires drastic reduction of the requested $113,107.31 in attorney's fees.

Plaintiff refused to join the class and also declined an offer of $31,000 in search of greater monetary award. As a result, instead of receiving her share of the class settlement, she received a jury award of one dollar. Plaintiff clearly took her chances and lost the large damage award she sought. Plaintiff filed her suit after the Fourth Circuit's decision in *Logan* made clear that indiscriminate strip searches were unconstitutional. Polk established nothing novel with regard to the legality of defendants' actions and the course of this litigation has consistently benefitted from and relied upon the rulings obtained by the efforts of plaintiffs' counsel in *Smith*. Plaintiff's lawsuit cannot be described as that of a "private attorney general" because she did not vindicate other persons' rights by establishing new legal rulings, nor did plaintiff seek injunctive relief. At trial, the jury found against plaintiff on her claim against Dodson, and plaintiff dropped her state law claims. The only result favorable to plaintiff was the defendants' stipulation of the liability of the County based upon prior rulings in *Smith*. The previous settlement with defendants in 1984, was also predicated upon this Court's rulings in *Smith*. In sum, plaintiff's refusal to simplify litigation of defendants' policy by joining the class or by accepting a generous settlement offer has resulted in a total loss for herself and no benefit to others.

Plaintiff sought $2,700,000 in damages for her own alleged injuries and merely rode the legal coattails of the collateral class litigation. The Court must g ve primary consideration to the crucial factor of the "degree of success," which in this case is nil. Because the plaintiff basically took her chances and lost with regard to the only element of relief she sought, the contingency fee arrangement is irrelevant: *ex post* adjustment for *ex ante* risk is appropriate only where the party wins the relief sought. The Court, however, is not un-mindful of the fact that Polk filed her suit before the intiation of the *Smith* action, and finds it proper to award a portion of plaintiff's attorney's fees and expenses up to the date at which time Polk was aware of the opportunity and significance of the preliminary injunction in *Smith* which was issued on September 18, 1982. Plaintiff counsel's records reveal that counsel reviewed the *Smith* file and the injunction on January 18, 1983. At that time a total of 242 hours had been spent on plaintiff's behalf. This amounts to 45.32 percent of the total 534 hours recorded in the first period through the end of 1983. Applying this percentage to the time and expenses for that period totalling $41,507.88, yields a subtotal of $18,607.43. Reflecting the limited success of plaintiff's case on the merits of the relief requested, an award of 25 percent of that figure is appropriate. Accordingly, plaintiff's counsel is entitled to attorney fees in the amount of $4651.86.