STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOSE F. PALACIO, DEFENDANT-APPELLANT.

Argued March 29, 1988—Decided August 17, 1988.

544

*Alan Silber* argued the cause for appellant (*Hayden, Perle & Silber,* attorneys).

*Frank J. Hoerst,* Salem County Prosecutor, argued the cause for respondent.

PER CURIAM.

The defendant, Jose Palacio, appeals his conviction for possession of a large quantity of cocaine and for possession with intent to distribute. He alleges that these convictions, predicated on the theory of constructive possession, were not supported by sufficient evidence. We find, however, that the evidence was sufficient to support the jury's verdict, and so affirm defendant's conviction.

I.

On July 26, 1984, defendant, Jose Palacio, was a passenger in a car owned and operated by Juan Londono. At approximately

7:20 p.m., New Jersey State Trooper Andrew Mastella stopped the vehicle that Palacio and Londono were in for speeding on U.S. Route 40 in Pennsville Township, New Jersey. While Londono was attempting to locate his driver's license and registration, Mastella observed a piece of paper in his wallet with figures written on it: $25,500 − $5,000 = $20,500. Mastella, based on his experience in law enforcement, determined that this piece of paper was typical of drug transaction slips carried by narcotics dealers.

Mastella attempted to question Londono about the figures but Londono did not respond and became "very nervous." The trooper then walked around to the passenger side of the vehicle and asked the defendant, Palacio, for identification. In response, he produced a valid Florida driver's license.

After Palacio produced his driver's license, Londono exited the vehicle, opened the trunk, and invited the trooper to search. Mastella declined, and then told Londono and Palacio to step out to the passenger side of the car. The trooper asked additional questions about the slip of paper. The defendant did not respond; instead he turned and walked away. During this time, Mastella testified, defendant was sweating, moving in circles, and appeared, in Mastella's opinion, to be "overly nervous."

Two other state troopers, Officers Don Phillipi and Thomas Gilbert, arrived on the scene to assist Mastella. Mastella obtained Londono's written consent to search the car and began to do so. Trooper Gilbert requested that Londono and Palacio move from the front of the car to the guardrail along the highway. In the meantime, defendant, as well as Londono, kept looking at the car, focusing on Mastella and the rear of the car during the search.

Trooper Mastella discovered a secret compartment behind the back seat. The compartment contained fifteen pounds of cocaine, packaged in four Tupperware containers and two cardboard boxes, all wrapped in brown tape. The retail value of

this cocaine was just under one million dollars, $960,000, and it was 79.3% pure. The State Police then arrested Londono and Palacio, who were both released on bail following the arrest.

A Salem County Grand Jury indicted both Londono and Palacio for possession of a controlled dangerous substance, cocaine, contrary to the provisions of *N.J.S.A.* 24:21–20(a)(1), and possession of a controlled dangerous substance, cocaine, with intent to distribute, contrary to the provisions of *N.J.S.A.* 24:21–19(a)(1).

The cases having been severed, defendant was tried separately. Defense counsel made a pretrial motion for admission of evidence concerning Londono's flight from the State. The trial court denied the motion under Evidence Rule 4, finding that such evidence could only confuse the jury's consideration of the issue of Palacio's guilt.

At trial, the State established the aforementioned facts relating to the stop of the motor vehicle, the discovery of the cocaine, and the arrest of the car's occupants. It brought out and stressed in particular the defendant's presence in a car containing almost one million dollars worth of cocaine and his furtive conduct during the stop and search. This conduct was said to include his refusal to answer any questions relating to the incriminating slip of paper, his heightened nervousness, and his continuing, close attention to the ongoing search of the car, in particular to the area of the car in which the drugs were secreted and eventually found. In addition, the State, through the testimony of the officers at the scene, established that Londono and Palacio conversed between themselves in a way apparently intended to keep the content of their conversations concealed; they spoke together in Spanish even though there was no indication that they could not understand or converse in English, suggesting, according to the State, that the defendants sought to conceal their conversation. At the end of the State's case, defendant moved for a directed verdict of acquittal, which the trial court denied, reasoning that the evidence could be

sufficient to bring the question of constructive possession to the jury.

The defendant presented only one witness. Christina Piedrahita, a friend of defendant's and fiancee of defendant's brother-in-law, who testified to Palacio's good character. She also testified that defendant had some understanding of the language, although he did not speak English well.

After summations, the trial court instructed the jury, describing the elements of the offenses that Palacio was charged with as follows:

> One, that exhibits S–4 through S–9 are cocaine; and two, that the defendant, Jose Palacio, knew that these exhibits contained cocaine; and three, that Jose Palacio possessed or obtained the cocaine; and four, that Jose Palacio intended to possess the cocaine.

The trial court then explained the difference between actual and constructive possession, stating correctly that both types of possession required a showing that defendant consciously and knowingly possessed the cocaine, *i.e.*, intentional dominion and control. The trial court defined constructive possession as being "aware of the presence of the property and ... able to exercise intentional control over it" even though not in actual physical possession. The trial court continued, instructing the jury on the State's claim that Palacio and Londono jointly possessed the cocaine:

> The law recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, the possession is joint; that is, they knowingly share control over the article.

After instructing the jury on the second count, possession with intent to distribute, the trial court charged the jury that it could "draw inferences from all of the surrounding circumstances and consider them in their totality." The trial court noted that the jury could consider

> the fact that the defendant was an occupant of a vehicle, which undoubtedly contained cocaine, ... the status of the defendant in relation to the vehicle, how long ... the defendant [was] in the vehicle, ... the proximity of the defendant to the drugs that were ultimately found in the vehicle, ... whether or not those drugs were easily accessible to him, ... his demeanor when he was confronted

by the police, his nervousness, if any, [and] his feigning lack of knowledge of the English language, if any.

The trial court, concluded noting that the jury could

consider whether or not it was reasonable for him to be an innocent occupant of the motor vehicle, and ... any other evidence or lack of evidence that has a bearing upon the elements in this case, [including] anything that might have, or might not have been found of an incriminatory nature on the defendant's person, [and proximity or lack thereof] ... of the defendant's personal articles ... to where the drugs were located.

The jury found defendant guilty on both counts. Prior to sentencing, defense counsel moved for judgment for acquittal notwithstanding the verdict. The trial court granted the motion. The State appealed, and the Appellate Division, in a published opinion, 205 *N.J.Super.* 256 (1985), reversed.

Thereafter the case took a complicated procedural course. Defendant retained a New York lawyer to perfect a petition for certification to the Supreme Court, which he failed to do. In addition, defendant failed to appear for sentencing at two successive sentencing hearings. A bench warrant was then issued, and shortly thereafter, defendant was apprehended when he sought to enter the country from Mexico. He was immediately transported to Salem County for sentencing. The trial court sentenced defendant to a fifteen-year term. Thereafter, defendant retained new counsel, who filed a notice of appeal and motions to vacate the sentence, to reduce the sentence, and for a new trial. The trial court declined to hear the motion for a new trial and the motion to vacate the sentence on the grounds that he was without jurisdiction to hear them after a notice of appeal had been filed. The court heard the motion for reduction of the sentence and reduced the sentence from fifteen years to eleven years. Bail pending appeal was granted.

In an unreported *per curiam* opinion, the Appellate Division affirmed. This Court granted certification. 109 *N.J.* 492 (1987). The petition for certification raises only the sufficiency of evidence claim that arises out of the Appellate Division's earlier opinion in *State v. Palacio,* 205 *N.J. Super.* 256 (1985),

although defendant had never filed a timely petition from that determination. Nevertheless, his petition from the 1987 Appellate Division ruling is timely and the Court has granted the petition to adjudge the claim asserted therein.[1]

## II.

The question before this Court therefore is whether the Appellate Division properly reversed the trial court's decision to grant a judgment of acquittal notwithstanding the guilty verdict (judgment n.o.v.). In granting defendant's motion for a judgment n.o.v., the trial court reasoned that the State had not established the nature of defendant's relationship to Londono, how long defendant had been in the car, and whether defendant knew of the presence of the cocaine. The court also noted that the cocaine was not observable by a passenger. *State v. Palacio, supra,* 205 *N.J.Super.* at 259. Thus, in the trial court's view, the prosecutor had established nothing more than defendant's presence at the scene. Concluding that this was an inadequate basis for the jury's determination of guilt, the trial court éntered an order of acquittal.

On appeal, the Appellate Division reversed. The court determined that the evidence presented by the State supported the inference of guilt drawn by the jury. According to the court, the jury drew reasonable inferences from the facts:

> [I]t could not reasonably be inferred a driver in a smuggling operation would pick up a hitchhiker or stranger. We think a smuggler with a large quantity of contraband would not invite a stranger into his car and run the risk the

---

[1] In the second appeal of this case, decided August 17, 1987, defendant raised five issues: (1) he was denied his sixth amendment right to counsel at his resentencing hearing; (2) he was denied effective assistance of counsel; (3) the record did not support the trial court's sentencing determination; (4) failure to charge "mere presence" was plain error; and (5) the court erroneously excluded evidence of the co-defendant's flight. The Appellate Division found that all of these claims were clearly without merit under *Rule* 2:11–3(e)(2). Defendant does not raise any of these claims in his petition for certification. Therefore, those claims are not before the court and stand as finally resolved by the Appellate Division.

stranger might steal the car and, albeit unknowingly, the contraband with it. Further the fact that Londono and defendant spoke together in any language in the face of obvious difficulties with the police supports an inference they were acquainted. We think the reasonable if not compelling inferences to be drawn here are that Londono knew and trusted defendant, defendant was fully aware of the presence of the cocaine and was involved in the smuggling operation with Londono. Thus we are satisfied that the motion for acquittal should have been denied. [205 *N.J. Super.* at 262.]

The standard for reviewing a claim that the evidence was insufficient to support the jury's guilty verdict for an appellate court and a trial court in a judgment n.o.v. motion is:

whether viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt. [*State v. Reyes,* 50 *N.J.* 454, 459 (1967).]

In *State v. Brown,* 80 *N.J.* 587 (1979), the Court held that when a defendant is one of several persons found on premises where illicit drugs are discovered, it may not be inferred that he knew of the presence of or had control of the drugs and so was guilty of possession, unless there are other circumstances or statements of the defendant tending to permit such an inference to be drawn. *Id.*

*Brown* involved the search of a Jersey City apartment in which defendant along with other persons lived. Prior to the search the police had observed numbers of known narcotics users enter the building and shortly thereafter exit surreptitiously. The search uncovered fifty envelopes of heroin worth a total of $250 and paraphernalia and packaging customarily used for narcotics. The heroin was found in the pocket of a woman's dress that was hanging in a closet. Another twelve envelopes of heroin were found on the person of another individual.

Defendant, Brown, alleged that the evidence was insufficient to support a verdict that he had possessed the heroin in the dress pocket. In addition to defendant's physical presence, the Court determined that the accompanying circumstances provided sufficient evidence of awareness or knowledge by defendant

of the heroin. It stated that the fact that the heroin was secreted in a dress rather than in a place open to view did not dispel the inference that the defendant had knowledge of its presence. This observation was based on the distinctive and significant nature of the contraband itself. "[H]eroin," the Court emphasized, "engenders a substantial penal threat. It is extremely unlikely that heroin could turn up in a person's residence without his awareness." 80 *N.J.* at 595 (citations omitted). The Court then noted that the surrounding circumstances, the presence of known narcotics users, the fact that the heroin was found in an area accessible only to a resident, and the presence of drug packaging paraphernalia throughout the home were such that inferences of awareness and possession were justified. To find otherwise, the Court stated, "would defy logic and human experience, indeed foist upon the courts an unwarranted naivete." *Id.* at 596.

Defendant maintains that a recent Appellate Division opinion applying *Brown, State v. Shipp*, 216 *N.J.Super.* 662 (1987), a case very similar factually to this case, in which the conviction was reversed, compels the reversal of Palacio's conviction. In *Shipp*, the defendant was a front seat passenger in a car that was stopped for speeding. Defendant's stepmother was a passenger in the rear seat. While the state police were questioning the occupants, defendant's stepmother dropped several sealed envelopes through the grate of a storm drain over which she was standing. The police recovered the envelopes and discovered a substantial amount of heroin therein. On the basis of these facts, a jury convicted defendant for possession of a controlled dangerous substance with intent to distribute. The Appellate Division reversed, finding that defendant's presence in the automobile did not "suffice to authorize an inference that he was sharing in the intentional control and dominion over the contraband material." 216 *N.J.Super.* at 666.

The circumstances in *Shipp*, however, as the Appellate Division there recognized, were distinguishable from those in this case. The court noted that in *Palacio* the drugs were found

"not in the personal possession of a co-defendant, but in a hidden compartment behind the rear seat." 216 *N.J. Super.* at 667. The court further distinguished *Palacio* from *Shipp*, noting that Palacio and Londono had evidenced a desire to speak privately and so there was some "proof of ... conspiratorial purpose." 216 *N.J. Super.* at 667 (citing *State v. Palacio*, *supra*, 205 *N.J. Super.* at 262).

We would not focus on defendant's use of his own language in a conversation with his companion as being probative or determinative of a criminal involvement with the contraband that was secreted in the car. It has evidential worth only as an indication that the parties knew one another, conversed with one another when critical and incriminating events were occurring, and sought to keep the content of their conversation concealed. We attribute no other permissible inference to the defendant's use of the Spanish language. However, as noted by the Appellate Division, other factors serve to distinguish *Shipp* and *Palacio*. In *Shipp*, the person in actual possession, defendant's stepmother, had the drugs in sealed envelopes in her handbag, a highly personal and private location suggesting defendant did not have any knowledge of the drugs; whereas in *Palacio*, the drugs, while concealed, were in the car to which defendant or any other occupant had open and free access. Moreover, in *Shipp*, the heroin was contained in a few envelopes. Here, the quantity of drugs was substantially larger —fifteen pounds in six separate containers. Also, the monetary value of the drugs here was infinitely greater—worth almost one million dollars. Finally, the conduct of the defendant as the drugs were being discovered and confiscated was consistent with an inference of guilty knowledge of the presence of the drugs. Added to these distinguishing facts are circumstances generating inferences that Londono as the driver of the car was involved substantially and actively in drug trafficking, that defendant knew Londono, and that the two had travelled together for a considerable distance—both apparently living or having residential addresses in the South.

The facts of this case resemble the facts in *Paez v. O'Lone*, 772 *F*.2d 1158 (3rd Cir.1985), in which the court upheld the possession conviction. There, the court denied the habeas petition of a defendant convicted of possession and possession with intent to distribute. State troopers stopped a car for speeding. At the time, the defendant was asleep under a blanket on the back seat. The police searched the vehicle and found nearly four pounds of cocaine. The court determined that the facts of the case supported inferences of defendant's guilt:

> [T]he jury could infer that the petitioner was not merely a casual occupant of the car. He was found asleep covered by a blanket in the back seat at approximately one o'clock in the afternoon. From this evidence, it would be reasonable to infer that he and the driver had been traveling together for some time.... Further, if the driver was aware of the cocaine, it would be a reasonable inference that he would not stop to pick up a hitchhiker or offer a ride to a stranger and then permit him to sleep on the back seat. Thus, it is inferrable that the two knew each other and had engaged in a joint venture to transport the cocaine from Florida to some northeastern state. Based on all of the circumstantial evidence, a rational jury could have found beyond a reasonable doubt that the petitioner and the driver had joint possession of the cocaine. [772 *F*.2d at 1160 (citations omitted).]

Defendant argues that other cases have required more evidence to convict in cases like this one. *See, e.g., United States v. Moreno–Hinojosa*, 804 *F*.2d 845 (5th Cir.1986) (evidence that defendant was a passenger in a truck carrying 450 pounds of marijuana, knew the driver, had two prior drug convictions and misrepresented both his job status and his relationship with the driver was insufficient to establish that he was riding in the truck to participate in the possession and distribution of the drug); *United States v. Collazo*, 732 *F*.2d 1200 (4th Cir.1984), *cert.* denied *sub nom. Nunez–Varela v. United States*, 469 *U.S.* 1105, 105 *S.Ct.* 777, 83 *L.Ed.*2d 773 (1985) (evidence that defendant was armed and present in an automobile escorting a rental truck carrying marijuana, and that the other occupant of defendant's car was a key figure in the marijuana conspiracy, found insufficient to prove possession charge); *United States v. Weaver*, 594 *F*.2d 1272 (9th Cir.1979) (conviction reversed where the defendant was a passenger in a truck in which

cocaine was found partly under the passenger seat). These cases, according to the defendant, demonstrate that the Appellate Division erred in concluding that the evidence supported the jury's determination of guilt.

It is, however, clear from the record that the evidence generates several permissible inferences to support the jury's determination of guilt. To reiterate, as the Appellate Division said, the jury could draw the inference that Londono, was indeed a drug smuggler. 205 *N.J. Super.* at 261. This inference was supported by several significant circumstances—the large quantity of drugs seized, their extraordinary monetary value, their degree of purity, the existence of a secret storage compartment in his car, and the slip of paper indicating a drug transaction found in Londono's wallet. The jury could also infer that the defendant was a knowing participant. An inference that a drug smuggler carrying a very large quantity of drugs would travel with a knowledgeable companion, and not an "innocent" passenger or stranger, is not only reasonable, it is likely. In addition, as the Appellate Division concluded, it was reasonable to infer that because Londono was from South Carolina and defendant had a Florida driver's license, they were traveling together. *Id.* at 262. Further, from the manner in which Londano and defendant engaged in conversations, it was reasonable to infer that the parties knew one another.

### III.

We are satisfied that the evidence sufficiently supported the jury's determination that defendant was in constructive possession of the large and valuable quantity of cocaine found in the car in which he was a passenger and that this supported its verdict that defendant was guilty of the possession of cocaine and possession of cocaine with the intent to distribute.

For the foregoing reasons, we affirm the judgment below.

STEIN, Justice, dissenting.

The narrow but very significant issue in this case concerns the quality of proof necessary to convict an automobile passenger of drug possession when a substantial quantity of drugs is found secreted in the automobile. The majority concludes that testimony describing defendant as nervous while the police searched the car, that defendant and the driver conversed in Spanish during the search although defendant had some understanding of English, and that cocaine valued at $960,000 was found in a secret compartment behind the back seat was sufficient to sustain defendant's conviction. I disagree and therefore dissent.

The pertinent facts are set forth in the majority opinion. Defendant and the owner and driver, Juan Londono, were indicted for possession of cocaine and possession with intent to distribute. *N.J.S.A.* 24:21–20(a)(1) and 24:21–19(a)(1). Defendant was tried separately, with a court interpreter fluent in English and Spanish. Convicted by a jury, the trial court granted defendant's motion for a judgment of acquittal. The Appellate Division reversed, reinstating the conviction. *State v. Palacio*, 205 *N.J.Super.* 256 (1985). Conceding that defendant's mere presence in the vehicle was insufficient to establish either knowledge that there was cocaine in the vehicle or control over the cocaine, *id.* at 259, the Appellate Division noted that Londono, the driver, was from South Carolina and defendant produced a Florida license, concluding that "both were far from home and were traveling together." *Id.* at 261–62. The court also inferred that they spoke in Spanish in order "to speak privately so the police would not understand them." *Ibid.* Finally, the court concluded that since Londono was obviously engaged in drug smuggling, it was self-evident that "a smuggler with a large quantity of contraband would not invite a stranger into the car and run the risk the stranger might steal the car and * * * the contraband with it." *Ibid.* Thus, the court inferred that "Londono knew and trusted

defendant, [who] was involved in the smuggling operation with Londono." *Ibid.*

In affirming the Appellate Division's reinstatement of defendant's conviction, the majority relies almost entirely on the circumstances stressed in the opinion below. *Ante* at 554. In addition, the Court notes that defendant appeared "overly nervous" while the police searched the car and that defendant watched the state trooper as he conducted the search. *Ante* at 545, 546.

There is no significant question about the basic principles that control the disposition of this case. In reviewing a trial court's judgment of acquittal after conviction by a jury, we give the State the benefit of all reasonable inferences from the testimony, and then consider whether "a reasonable jury could find guilt of the charge beyond a reasonable doubt." *State v. Reyes,* 50 *N.J.* 454, 459 (1967). It is also settled that in drug possession cases,

> [w]here * * * a defendant is one of several persons found on premises where illicit drugs are discovered, it may not be inferred that he knew of the presence or had control of the drugs unless there are other circumstances or statements of the defendant tending to permit such an inference to be drawn. [*State v. Brown,* 80 *N.J.* 587, 593 (1979) (quoting *State v. Sapp,* 71 *N.J.* 476 (1976), rev'g on dissenting opinion below, 144 *N.J.Super.* 455, 461 (App.Div. 1975)).]

Thus, the critical issue in this case is whether the collateral circumstances, other than defendant's mere presence in the vehicle, would permit a reasonable jury to conclude beyond a reasonable doubt that defendant knew the drugs were present, had actual or constructive possession of the drugs, *see State v. Schmidt,* 110 *N.J.* 258, 266–71 (1988), and intended to distribute them. We gain insight from several federal decisions that have addressed the issue in cases involving similar circumstances. In *United States v. Moreno–Hinojosa,* 804 *F.*2d 845 (5th Cir. 1986), the court reversed defendant's conviction of possession of marijuana with intent to distribute. The evidence indicated that defendant was a passenger in a truck carrying 450 pounds of marijuana. Defendant knew the driver of the truck and had two prior drug convictions. When questioned by federal

agents, defendant misrepresented both his job status and his prior relationship with the driver. The court concluded that the government's evidence was insufficient to sustain the conviction:

> Even if Moreno knew that Maldonado was making an illegal marihuana run, this fact would not be sufficient evidence to establish his possession without an additional showing that he was riding in the truck to participate in the possession and distribution. The government did not make this additional showing even circumstantially beyond a reasonable doubt. [804 *F.*2d at 847.]

Similarly, in *United States v. Collazo*, 732 *F.*2d 1200 (4th Cir.1984), *cert.* denied *sub nom. Nunes–Varela v. United States*, 469 *U.S.* 1105, 105 *S.Ct.* 777, 83 *L.Ed.*2d 773 (1985), the court considered the sufficiency of evidence to sustain a conviction for possession of marijuana against a defendant who was an armed passenger in a vehicle escorting a U–Haul truck containing a large shipment of marijuana. Another occupant of the vehicle was a key figure in the charged marijuana conspiracy. Defendant was not in view when the drug transaction occurred. Reversing the conviction for possession, the court found the evidence insufficient to prove that defendant "knew of the presence of the marijuana or exerted any dominion or control, actual or constructive, sufficient to indicate possession with intent to distribute." *Id.* at 1205. *See also United States v. Weaver*, 594 *F.*2d 1272, 1275 (9th Cir.1979) (reversing passenger's conviction for possession of cocaine where package containing $30,000 worth of cocaine found partly under passenger seat; evidence ruled insufficient to prove "requisite dominion and control over the package to constitute possession").

Obviously, cases such as these are fact-sensitive. But the principle to be distilled from the federal court decisions is that the proof that supplements a defendant's presence must tend to demonstrate both knowledge of the contraband's existence and the ability to exert control over it. When the defendant is a passenger in a vehicle in which drugs are found, and declines to testify, the prosecutor's task may be formidable. Nevertheless, we do not permit defendants to be convicted because the police

suspect that they are guilty. What due process requires is proof of guilt beyond a reasonable doubt.

The evidence in this case falls far short of the mark. The fact that defendant spoke to the driver in Spanish, his native language, while the police searched the car, proves absolutely nothing relevant to the offenses at issue in this case. Nor should any significance have been accorded to the fact that defendant watched the police as they searched the car. Indeed, why would he watch anything else? That defendant appeared nervous while the police searched the car proves little more than that the presence of police officers tends to make most people somewhat apprehensive. The conclusion that complicity between defendant and the driver was established because they were both far from home and traveling in the same car is simply unfounded. Those facts may suggest the existence of a relationship between the occupants of the vehicle, but they prove nothing about defendant's knowledge of the cocaine or his ability to control it.

In my view, the evidence in this case was not sufficient to enable a reasonable jury to find defendant's "guilt of the charge beyond a reasonable doubt." *State v. Reyes, supra*, 50 *N.J.* at 459. I would reverse the judgment of the Appellate Division.

Justice CLIFFORD joins in this opinion.

*For affirmance* —Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, and GARIBALDI—5.

*For reversal* —Justices CLIFFORD and STEIN—2.